**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| 360 IMAGING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| v. | ) | |
| | ) | **(Removed from the Superior** |
| ITXPROS DENTAL, INC., ITXPROS, | ) | **Court of Fulton County,** |
| LLC, KARIM MOHAMED | ) | **Georgia, Civil Action File No.** |
| ELSAYED, AHMED KHATER, | ) | **2021CV356723)** |
| HUSSEIN TAREK, SARA AMIN, | ) | |
| SHENOUDA SAMIR BASEM | ) | |
| TAREK, AYA ABDEL KADER | ) | |
| MOUSTAFA and MARAM ALAA | ) | |
| ELDIN AZMY, | ) | |
| | | |
| Defendants. | | |

**NOTICE OF REMOVAL**
**(DIVERSITY OF CITIZENSHIP JURISDICTION)**

**TO THE CLERK OF COURT AND PLAINTIFF AND ITS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that defendants ITXPros Dental, Inc. and ITXPros, LLC (the "ITXPros Defendants"), the only defendants served in the above-captioned action, hereby remove the above-captioned action from the Superior Court of the State of Georgia, County of Fulton, to the United States District Court, Northern District of Georgia. The ITXPros Defendants allege they are entitled to removal pursuant to 28 U.S.C. § 1441(b).

1.      On November 9, 2021, an action was commenced in the Superior

Court of the State of Georgia, County of Fulton, entitled *360 Imaging, LLC v.*

*ITXPros Dental, Inc., et al* (the  "State Court Action").  A true and correct copy of

the Summons directed to ITXPros, LLC is attached hereto as **Exhibit A**.  A true

and correct copy of plaintiff's Verified Complaint for Damages and Injunctive

Relief is attached hereto as **Exhibit B**.

2.      Defendants ITX Pros, LLC and ITX Pros Dental, Inc. were served

with the summons and complaint via their registered agent in Delaware on

November 22, 2021.

3.      This is a civil action of which this Court has original jurisdiction

under 28 U.S.C. § 1332, and is one which may be removed to this Court by

defendants pursuant to the provisions of 28 U.S.C. § 1441(b) in that there is

complete diversity of citizenship and the amount in controversy exceeds $75,000.

ITXPros, LLC is a limited liability company organized and existing under the laws

of the State of Delaware with its principal place of business located in Tampa,

Florida.  ITXPros Dental, Inc. is a corporation organized and existing under the

laws of the State of Delaware with its principal place of business located in Lewes,

Delaware.  According to its Verified Complaint, Plaintiff is a Georgia limited

liability company with its principal place of business located at 6445 Powers Ferry

Road, Suite 360, Atlanta, Georgia 30339.  See Exhibit B at ¶¶ 7 and 8.

4.     A copy of the notice of removal has been filed or is being filed

contemporaneously in the State Court Action.

5.     Attached hereto as **Exhibits C** is a true and correct copy of Plaintiff's

Motion for Temporary Restraining Order and Interlocutory Injunction and Brief in

Support filed on December 13, 2021.  Attached hereto as **Exhibit D** is a true and

correct copy of the Affidavit of Yahia Megahed in Support of Plaintiff's Motion

for Temporary Restraining Order and Interlocutory Injunction, also filed on

December 13, 2021.   According to the docket in the State Court Action, Exhibits

A through D are all the documents filed in the State Court Action.

**WHEREFORE**, the ITXPros Defendants pray that the State Court Action be removed from the Superior Court of Fulton County to this Court and that this Court assume jurisdiction over the action and determine it on the merits.

Respectfully submitted, this 22nd day of December, 2021.

KATZ LITIGATION GROUP, LLC

/s/ Adam S. Katz
Adam S. Katz
Georgia Bar No. 408661

200 Galleria Parkway SE
Suite 1805
Atlanta, GA 30339
(404) 567-4601

*Attorney for Defendants ITXPros*
*Dental, Inc. and ITXPros, LLC*

## **Local Rule 7.1 Compliance Certificate**

Pursuant to L.R. 7.1D, this is to certify that the foregoing *Notice of Removal* complies with the font and point selections approved by the Court in L.R. 5.1B. The foregoing Motion was prepared on a computer using the Times New Roman font (14 point).

KATZ LITIGATION GROUP, LLC

*/s/ Adam S. Katz*
Adam S. Katz
Georgia Bar No. 408661

200 Galleria Parkway SE
Suite 1805
Atlanta, GA 30339
(404) 567-4601

# EXHIBIT A

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

360 IMAGING, LLC

**Plaintiff,**

vs.

ITXPROS DENTAL, INC., ITX PROS, LLC,
KARIM MOHAMED ELSAYED, AHMED
KHATER, HUSSEIN TAREK, SARA AMIN,
SHENOUDA SAMIR, BASEM TAREK, AYA
ABDEL KADER MOUSTAFA, and MARAM
ALAA ELDIN AZMY,

**Defendants.**

) Case
) No.: **2021CV356723**
)
)
)
)
)
)
)
)
)
)
)
)

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

Matthew W. Clarke, Esq.

Smith, Gambrell & Russell, LLP

1105 W. Peachtree St. NE, Ste. 1000

Atlanta, Georgia 30309

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

This ___9th___ day of ___November___, 20 _21_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By ___*Tracey Vaughn*___
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

**General Civil and Domestic Relations Case Filing Information Form**

☒ Superior or ☐ State Court of _____Fulton_____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed ___11/9/2021___<br>MM-DD-YYYY | Case Number ___2021CV356723___ | |

**Plaintiff(s)**

360 Imaging, LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

ITXPros Dental, Inc., ITXPros, LLC, Karim

Mohamed Alsayed, Ahmed Khater, Hussein Tarek,

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Sara Amin, Shenouda Samir, Basem Tarek, Aya

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Abdel Kader Moustafa, and Maram Alaa Aldin Azm

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Plaintiff's Attorney ___Matthew W. Clarke___   State Bar Number ___127430___   Self-Represented ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

| General Civil Cases | Domestic Relations Cases |
|---|---|
| ☐ Automobile Tort | ☐ Adoption |
| ☐ Civil Appeal | ☐ Contempt |
| ☐ Contempt/Modification/Other Post-Judgment | ☐ Non-payment of child support, medical support, or alimony |
| ☐ Contract | ☐ Dissolution/Divorce/Separate Maintenance/Alimony |
| ☐ Garnishment | ☐ Family Violence Petition |
| ☐ General Tort | ☐ Modification |
| ☐ Habeas Corpus | ☐ Custody/Parenting Time/Visitation |
| ☐ Injunction/Mandamus/Other Writ | ☐ Paternity/Legitimation |
| ☐ Landlord/Tenant | ☐ Support – IV-D |
| ☐ Medical Malpractice Tort | ☐ Support – Private (non-IV-D) |
| ☐ Product Liability Tort | ☐ Other Domestic Relations |
| ☐ Real Property | |
| ☐ Restraining Petition | |
| ☒ Other General Civil | |

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
**Case Number**                              **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

# EXHIBIT B

Fulton County Superior Court
***EFILED***TV
Date: 11/9/2021 3:34 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

360 IMAGING, LLC )
               )
       Plaintiff, )     CIVIL ACTION FILE NO.
               )     2021CV356723
     v. )
               )
ITXPROS DENTAL, INC., )
ITXPROS LLC, )
KARIM MOHAMED ELSAYED, )
AHMED KHATER, )
HUSSEIN TAREK, )
SARA AMIN, )
SHENOUDA SAMIR, )
BASEM TAREK, )
AYA ABDEL KADER MOUSTAFA, and )
MARAM ALAA ELDIN AZMY, )
               )
       Defendants. )

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW Plaintiff 360 Imaging, LLC ("Plaintiff" or "360imaging") and

files this Verified Complaint against Defendants ITXPros Dental, Inc., ITXPros

LLC (ITXPros Dental, Inc. and ITXPros LLC are hereinafter referred to jointly and

severally as "ITXPros"), Karim Mohamed ElSayed ("Defendant ElSayed'), Ahmed

Khater ("Defendant Khater"); Hussein Tarek ("Defendant H. Tarek"); Sara Amin

("Defendant Amin"); Shenouda Samir ("Defendant Samir"); Basem Tarek

("Defendant B. Tarek"); Aya Abdel Kader Moustafa ("Defendant Moustafa"); and

SGR/26308997.6

Maram Alaa Eldin Azmy ("Defendant Azmy"). As grounds therefore, Plaintiff respectfully alleges as follows:

1.

This lawsuit arises in the context of a former employment relationship between 360imaging and Defendants ElSayed, Khater, H. Tarek, Amin, Samir, B. Tarek, Moustafa, and Azmy (collectively the "Former Employee Defendants"), all of whom left their jobs at 360imaging to form and/or work for Defendant ITXPros, and to operate ITXPros as a direct competitor of 360imaging.

2.

Upon information and belief, the Former Employee Defendants breached their fiduciary obligations and duty of loyalty to Plaintiff 360imaging by improperly acting to divert business, take confidential and proprietary information and trade secrets and divert business away from 360imaging and set up ITXPros as a competing entity while they were still employed by 360imaging.

3.

Defendants ITXPros and the Former Employee Defendants have established ITXPros as a direct competitor to 360imaging principally by stealing – literally copying and taking – and utilizing 360imaging's proprietary computer software,

2

designs, customer lists, pricing information and other materials, both tangible and intangible, which constitute protected trade secret information.

4.

The case also involves post-employment restrictive covenants between 360imaging and Defendants ElSayed, Samir, and Azmy, which are contained in written employment agreements with Plaintiff.

5.

This case also involves Defendants' tortious interference with Plaintiff's contractual relations and business relations using improper means.

6.

This case also involves Defendants' misappropriation of Plaintiff 360imaging's property, trade secrets and confidential information. Plaintiff seeks injunctive relief and damages due to the immediate and irreparable harm it is experiencing.

## PARTIES, JURISDICTION AND VENUE

7.

360imaging is a Georgia limited liability company principally engaged in the business of creating and utilizing computer software, laboratories and products to

3

aid dental surgeons and other professionals and patients in the field of dental implants.

8.

360imaging's principal place of business is located at 6445 Powers Ferry Road, Suite 360, Atlanta, Fulton County, Georgia 30339.

9.

Defendant ITXPros Dental Inc. is a corporation organized and existing under the laws of the State of Delaware.  ITXPros Dental, Inc. may be served through its registered agent Harvard Business Services, Inc. at 16192 Coastal Highway, Lewes, Delaware 19958.

10.

Defendant ITXPros LLC is a corporation organized and existing under the laws of the State of Delaware. ITXPros LLC may be served through its registered agent Harvard Business Services, Inc. at 16192 Coastal Highway, Lewes, Delaware 19958.

11.

Defendant Karim may be served at his address: 26 Kolyet El Banat Project - Behind Dar El Defaa - First Nasr City - Cairo – Egypt.

4

12.

Defendant Ahmed Khater may be served at his address:  6M Square 1224 - Masaken Sheraton - El Nozha - Cairo – Egypt.

13.

Defendant Hussein Tarek may be served at his address:  Fifth Settlement - District 5 - M1 First New Cairo - Cairo – Egypt.

14.

Defendant Sara Amin may be served at her address: 10 Yahia Shahin Street - El Omranya - Giza – Egypt.

15.

Defendant Shenouda Samir may be served at his address: Said Street - Berket El Sabaa West - Berket El Sabaa District - Menoufia – Egypt.

16.

Defendant Basem Tarek may be served at his address: 13 El Falaky Street - Mahatet El Ramel - El Atareen - Alexandria – Egypt.

17.

Defendant Moustafa may be served at 7 El wakad Street by Tomanbai Street - Zeitoun - Cairo – Egypt.

18.

Defendant Azmy may be served at 4 Ibn Batouta Street - Haram - Giza –
Egypt.

19.

Jurisdiction and venue are proper in this Court because: (a) the restrictive
covenants contained in the employment agreements between 360imaging and
Defendants ElSayed, Samir and Azmy were made and intended to be performed in
significant part in Fulton County, O.C.G.A. § 14-11-1108 & § 14-2-510(b)(2); (b)
substantial equitable relief is sought, O.C.G.A. § 9-10-30; (c) the employment
agreements between 360imaging and Defendants ElSayed, Samir and Azmy contain
a forum selection clause in which Defendants ElSayed, Samir and Azmy consent to
personal jurisdiction and venue in Fulton County; (d) Defendants have engaged in
tortious interference with contract within Fulton County; (e) each of the Former
Employee Defendants worked for and were employed by Plaintiff, which is located
within Fulton County, Georgia and committed one or more tortious acts or other
unlawful acts within this County; (e) Defendants entered into and carried out an
unlawful conspiracy and caused damages within Fulton County; and (f) Plaintiff has

6

experienced damage in the State of Georgia due to Defendants' misappropriation of

Plaintiff's trade secrets.[1]

### GENERAL ALLEGATIONS
**360imaging's Business and Violations by Certain Former Employee**
**Defendants of their Written Employment Agreements and Other Obligations**

20.

360imaging is a national provider of products and services to dental health

providers, including creation and use of proprietary treatment planning software for

planning of implant cases, surgical guides, and digital lab services (hereinafter

"360imaging's Business").

21.

360imaging has invested substantial time, effort, money, and other resources

in the development of 360imaging's business and the development and cultivation

of long-term business relationships with its customers.

---

[1] Georgia follows the doctrine of lex loci delicti, which requires the Court to apply
the law of the forum where the injury sustained was suffered rather than the place
where the act was committed. *Siris Therapeutics v. Mimedx Grp.*, No. 1:19-cv-
00857, 2020 U.S. Dist. LEXIS 258429, at *9 (n.D. Ga. Feb. 24, 2020) (quoting
*Risdon Enters., Inc. v. Colemill Enters., Inc.*, 324 S.E. 2d 738, 740 (Ga. Ct. App.
1984).

7

22.

Defendant ElSayed worked for 360imaging primarily in a sales role, responsible for contacting current and potential customers to develop new business, and Defendant ElSayed solicited customers and prospective customers for 360imaging.

23.

Defendants ElSayed, Samir and Azmy worked on proprietary and confidential proposals and presentation materials for 360imaging's customers and potential customers, reviewed and managed customer cases and orders, and had access to 360imaging's confidential and proprietary information, including its pricing, costs and surgical guides.

24.

Defendant ElSayed began employment with 360imaging on or about December 21, 2020 and resigned employment on or about May 31, 2021.

25.

Defendant Samir was terminated from employment with 360imaging on or about November 2, 2021 after Plaintiff discovered that he had been conspiring with, working for and assisting Defendant ITXPros and the other Former Employee Defendants while also employed by 360imaging. Defendant Samir worked for

Plaintiff as a segmentation specialist responsible for performing clinical operations on client cases and as part of designing Plaintiff's final product.

26.

Defendant Azmy was previously an employee of 360imaging and resigned her employment on or about September 14, 2021. Defendant Azmy worked for Plaintiff as a treatment planner, planning and designing doctor cases and was regularly in contact with Plaintiff's customers.

27.

After resigning employment, Defendant Azmy was specifically instructed to return her 360imaging company-issued laptop computer to Plaintiff but failed and refused to, thereby maintaining copies of Plaintiff's trade secrets and other confidential and proprietary information on that laptop. These trade secrets include, but are not necessarily limited to, proprietary company software including 360dps (treatment planning software) and 360Courier (the company's CRM and order management system), customer list and customer order history, product design files, and company product manuals, presentations and other confidential materials.

28.

Defendant Samir improperly and without authorization copied Plaintiff's proprietary computer software onto his personal computer. Defendant Samir

9

admitted to Plaintiff that he utilized Plaintiff's proprietary software for, on behalf of and for the benefit of Defendant ITXPros. Upon demand by Plaintiff, he purportedly deleted such software from his computer but it is currently unknown whether Defendant Samir made or has another copy of Plaintiff's proprietary software.

29.

Each of the Former Employee Defendants had access to Plaintiff's confidential customer list, customer-related information, and other confidential information and trade secrets of Plaintiff during their employment with Plaintiff. Each of the Former Employee Defendants improperly misappropriated such trade secrets.

30.

Effective on or about January 1, 2021, 360imaging and Defendant ElSayed entered into a written Employment Agreement, pertinent portions of which are attached hereto as Exhibit "A." Defendant ElSayed worked as a business development manager and sales representative for Plaintiff.

10

31.

On January 1, 2021, 360imaging and Defendant Samir entered into a written Employment Agreement, pertinent portions of which are the same as Exhibit A.

32.

Effective on or about January 1, 2021, 360imaging and Defendant Azmy entered into a written Employment Agreement, pertinent portions of which are the same as Exhibit A. (because they contain the same restrictive covenant language, the Employment Agreements of Defendants ElSayed, Samir and Azmy are hereinafter referred to jointly and severally as the ("Employment Agreement").

33.

Defendants ElSayed's, Samir's and Azmy's Employment Agreements provide in pertinent part as follows:

> Employee further acknowledges and agrees that Employer's position will necessitate a high level of interaction between Employee and Employer's clients and employees, and Employee may be one of the primary contacts with a client on behalf of Employer; accordingly, there is a high risk and opportunity for Employee to misappropriate the relationship and goodwill existing between Employer and its clients. Thus, the purposes of this Agreement include without limitation the following: (a) the protection from use or disclosure to third-parties of non-public information relating to Employer's business; (b) the protection of unfair appropriation of Employer's goodwill and information acquired by or which will be acquired by Employee during his or her employment; (c) the protection of Employer's business relationships that have been or will be developed or nurtured or managed by the Employee during his or her employ by the Employer; and (d) the

11

protection of Employer's investment in any specialized training provided to employee;

7. **Agreement Not to Compete.** During the term of Employee's employment and for the Restricted Period, Employee shall not engage in a Competing Activity in the Territory for a Competing Business.

8. **Agreement Not to Solicit Clients.** During the term of Employee's employment and for the Restricted Period, Employee shall not, directly or by assisting others, solicit, attempt to solicit, call upon, divert, or initiate contact or communication with any Restricted Client on behalf of a Competing Business for the purpose of selling or providing, or attempting to sell or provide, any service or product that is the same as or competitive or potentially competitive with any product or service sold or provided by Employer.

34.

Defendants ElSayed, Samir and Azmy agreed to jurisdiction and venue in this Court in the Employment Agreement. Section 16 of the Employment Agreement specifically provides as follows:

**Governing Law and Jurisdiction.** This Agreement shall be governed by the laws of the State of Georgia. The parties agree the appropriate State or Federal courts in Fulton County, Georgia shall have jurisdiction and venue for all disputes between the parties under this Agreement. Employee hereby irrevocably consents to the jurisdiction and venue of the State and Federal courts within Fulton County, Georgia, for adjudication of disputes between the parties under this Agreement. Employee hereby waives any objections or defenses to jurisdiction or venue in any such proceeding before such court. The parties hereby agree that the governing law and venue set forth in this Section is expressly, knowingly, and voluntarily agreed to by the parties.

12

35.

360imaging has legitimate business interests that justify enforcement of the above restrictive covenants with Defendants ElSayed, Samir and Azmy. Specifically, the restrictive covenants protect 360imaging's trade secrets and confidential and proprietary information; its substantial relationships with prospective and existing customers; and customer and client goodwill associated with its business, including but not limited to its name and marketing or trade area; and specialized training provided by 360imaging.

36.

Defendants ElSayed, Samir and Azmy have violated the non-competition provisions of the Employment Agreements.

37.

Despite their customer non-solicitation obligations, Defendants ElSayed, Samir and Azmy have contacted and solicited 360imaging's customers with whom they had material contact during employment with Plaintiff and have diverted business from 360imaging to ITXPros.

38.

ITXPros was and is aware of Defendants ElSayed's, Samir's and Azmy's restrictive covenant obligations to 360imaging.

39.

ITXPros has caused or permitted Defendants ElSayed, Samir and Azmy to breach their contractual obligations to 360imaging and thus ITXPros has tortiously interfered with Plaintiff's contractual relations.

40.

ITXPros has tortiously interfered with 360imaging's business relations with its customers through the use of improper means, e.g. the improper taking and use of Plaintiff's confidential information and trade secret information including the computer software and surgical guides used by ITXPros in its business.

41.

Upon information and belief, the Former Employee Defendants besides Defendants ElSayed, Samir and Azmy are aware of the restrictive covenant obligations those Defendants owe to Plaintiff and have conspired together and have caused or permitted or otherwise assisted them in violating those obligations and have thus tortiously interfered with Plaintiff's contractual and business relations.

42.

Upon information and belief, Defendant ElSayed, Samir and Azmy kept and are using 360imaging's confidential customer contact information to solicit 360imaging's customers and potential customers on behalf of and with the knowledge and participation of Defendant ITXPros.

43.

Defendant ITXPros and the Former Employee Defendants have assisted in the improper solicitation of Plaintiff's customers within Fulton County and elsewhere in the State of Georgia.

44.

As a direct and proximate result of Defendants ElSayed's, Samir's and Azmy's unlawful solicitation of 360imaging's customers, 360imaging has suffered and continues to suffer irreparable damages and other harm which cannot adequately be remedied through monetary relief alone.

45.

While still employed by and owing fiduciary obligations and a duty of loyalty to 360imaging, Defendant Azmy worked for or otherwise assisted Defendant ITXPros in a manner designed to benefit ITXPros to the detriment and damage of Plaintiff.

## DEFENDANTS' MISAPPROPIATION AND USE OF PLAINTIFF'S TRADE SECRETS AND PROPRIETARY INFORMATION AND COMPUTER SOFTWARE

46.

360imaging developed, owns and utilizes a proprietary software program to offer its customers digital planning software to use in determining and implementing dental implant patient treatment, including the use of three-dimensional (3D) computer imaging to ensure ideal assessment of bone and prosthetic issues as well as the creation of proprietary surgical guides to facilitate patient treatment.

47.

The software that was developed and is marketed and utilized by 360imaging, including the computer code used to design such software, is an important, material part of 360imaging's business and constitutes confidential information not known to the public generally and is a protected trade secret.

48.

Plaintiff's proprietary software is not available to the public and is only made available to 360imaging's employees and customers utilizing Plaintiff's secured access system.

16

49.

Notwithstanding the foregoing, Defendants copied and took 360imaging's proprietary computer software and are actively using it along with other misappropriated trade secrets to conduct business as ITXPros in direct competition with 360imaging's Business. In addition to copying 360imaging's proprietary software, Defendants stole 360imaging's product design files, which they have used to create a product they market as being identical to 360imaging's products. Defendants conspired to and did unlawfully misappropriate 360imaging's trade secrets and are exploiting their use of such trade secrets to Defendants' direct benefit and to the direct and substantial detriment of 360imaging.

50.

Defendants, including specifically Defendant ElSayed, have solicited away and taken business from 360imaging by touting its use of the same 3D digital imaging, surgical planning guides and proprietary techniques for reviewing and managing customer cases and orders that they unlawfully misappropriated from Plaintiff, while claiming they can offer the same products at a cheaper price.

51.

Defendant ElSayed identifies himself as a "Managing Partner" at ITXPros.

17

52.

Defendant Khater identifies himself as "Founder" and "Chief executive officer (CEO)" of ITXPros.

53.

While they were employed with 360imaging, the Former Employee Defendants other than Defendants ElSayed, Samir and Azmy were also presented with a form employment agreement substantially similar in form and content to the Employment Agreements signed by Defendants ElSayed, Samir and Azmy; however, those other Former Employee Defendants refused to sign the agreements that were presented to them and instead quit their employment soon thereafter to operate ITXPros as a direct competitor to Plaintiff and did so utilizing improper means including the improper misappropriation and use of Plaintiff's trade secrets. These Former Employee Defendants began their work or services for ITXPros while still employed by 360imaging and thereafter.

54.

On information and belief, Defendant Hussien Tarek copied and took a copy of 360imaging's proprietary and confidential software and disclosed and provided it to ITXPros which is now utilizing it.

55.

Defendant Sara Amin is currently an employee or agent of ITXPros and holds herself out as Clinical Director for ITXPros. While she was employed with Plaintiff 360imaging, Defendant Amin was provided with use of a 360imaging-owned laptop computer which contained Plaintiff's proprietary and confidential information and trade secrets. When she quit her employment with 360imaging in or around March 26, 2021, Defendant Amin was instructed to return the Plaintiff's laptop computer; however, she has failed and refused to return such laptop computer which contains Plaintiff's trade secrets and proprietary and confidential information including company data, customer lists, design files and the Plaintiff's proprietary trade secret-protected software related to 360imaging's Business. On information and belief, Defendant Amin has shared such trade secret information with ITXPros and Defendants are improperly using Plaintiff's trade secrets to Defendants' benefit and Plaintiff's material detriment.

56.

At all times pertinent, 360imaging has taken measures that are reasonable under the circumstances to protect and maintain the secrecy of its confidential business information and trade secrets, including, but not limited to: password protecting its computers and other electronic devices that are capable of accessing

19

360imaging's networks and systems that house such information and data; prohibiting the use of company electronics for personal use; restricting the use of personal electronic devices for work-related purposes; prohibiting the copying, transfer, or other appropriation of trade secret and confidential information; and requiring the return of all confidential and trade secret data upon termination of employment.

57.

360imaging has implemented computer security measures to limit access to and maintain the secrecy of its confidential business information and trade secrets. 360imaging email accounts are protected by requiring users to have a unique username and password and to use multi-factor authentication. Likewise, information on 360imaging's file server data can only be accessed by a computer or mobile device with specific software and user access requires a unique username and password and use of multi-factor authentication. Other databases and software used by 360imaging are also protected by username and passwords for users.

58.

360imaging's confidential and proprietary information and other trade secrets are not commonly known by or available to the public.

59.

360imaging's confidential and proprietary information and other trade secrets misappropriated by Defendants derive economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure.

60.

Defendants ElSayed, Samir and Azmy each agreed in their respective Employment Agreements that they would not, during the defined Restricted Period, engage in a Competing Activity (as defined) in the Territory (as defined) for a Competing Business (as defined); however, they have willfully violated the terms of their non-competition obligations to the direct detriment of Plaintiff.

## COUNT I – BREACH OF CONTRACT – CUSTOMER NON-SOLICITATION
### (Against Defendants ElSayed, Samir and Azmy)

61.

Plaintiff re-alleges and adopts Paragraphs 1-60 of this Verified Complaint.

62.

Defendants ElSayed, Samir and Azmy knowingly and voluntarily agreed to be bound by the restrictive covenants in their Employment Agreements.

21

63.

The customer non-solicitation provision in the Employment Agreement is valid, is supported by valuable consideration, and is enforceable under Georgia law.

64.

Defendants ElSayed, Samir and Azmy breached the customer non-solicitation provision by soliciting 360imaging's customers and potential customers with whom they had personal contact during their employment with 360imaging.

65.

As a direct and proximate result of Defendants ElSayed's, Samir's and Azmy's continuing and repeated breaches of the customer non-solicitation provision, 360imaging has suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to its relationships with customers, and damage to its business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

66.

If injunctive relief is not granted to stop Defendants ElSayed's, Samir's and Azmy's breach of their customer non-solicitation obligations, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

22

67.

Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief enjoining and restraining Defendants ElSayed, Samir and Azmy from violating the restrictive covenant obligations in the Employment Agreement.

### COUNT II – BREACH OF CONTRACT – CONFIDENTIAL INFORMATION
**(Against Defendants ElSayed, Samir and Azmy)**

68.

Plaintiff re-alleges and adopts Paragraphs 1-60 of this Verified Complaint.

69.

Defendants ElSayed, Samir and Azmy knowingly and voluntarily agreed to be bound by the restrictive covenants in the Employment Agreement.

70.

Defendants ElSayed, Samir and Azmy breached the confidentiality provision in the Employment Agreement by retaining and using 360imaging's property and confidential information, including information about 360imaging's customers and confidential business information.

23

71.

As a direct and proximate result of Defendants ElSayed's, Samir's and Azmy's breach of the confidentiality provision in the Employment Agreement, 360imaging has suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to its relationship with customers, and damage to its business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

72.

As a direct and proximate result of Defendants ElSayed's, Samir's and Azmy's continuing and repeated breaches of the confidentiality provision, 360imaging has suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, and loss of the value of its confidential information, and for some of such injuries, there is no adequate remedy at law.

### COUNT III – BREACH OF CONTRACT – RETURN OF PROPERTY
### (Against Defendants ElSayed, Samir and Azmy)

73.

Plaintiff re-alleges and adopts Paragraphs 1-60 of this Verified Complaint.

24

74.

Defendants ElSayed, Samir and Azmy knowingly and voluntarily agreed to be bound by the Employment Agreement.

75.

Defendant ElSayed breached the return of property provision in the Employment Agreement by retaining, using, and refusing to return 360imaging's property and confidential information, including information about 360imaging's customers and projects it was bidding on.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
## GEORGIA TRADE SECRETS ACT, O.C.G.A §§ 10-1-760 ET SEQ
### (Against all Defendants)

76.

Plaintiff re-alleges and adopts Paragraphs 1-60 of this Verified Complaint.

77.

The customer lists, software and information about customers, patients, surgical guides and treatment plans that the Former Employee copied and/or took constitute a trade secret as defined under the Georgia Trade Secrets Act, O.C.G.A. §§ 10-1-760 et seq.

78.

That information is commercially valuable to 360imaging, was not available to the general public, and gave 360imaging a competitive advantage.

79.

360imaging took reasonable steps to protect the customer and project information and proprietary computer software to which the Former Employee Defendants had access and which they took from 360imaging.

80.

360imaging derives economic value from the general public and its competitors not having access to the information the Former Employee Defendants misappropriated from 360imaging.

81.

The Former Employee Defendants each acquired this information from 360imaging as an employee and under circumstances that gave rise to a duty to maintain its secrecy.

82.

Upon information and belief, the Former Employee Defendants have used this information to unlawfully compete against 360imaging and have misappropriated

and disclosed 360imaging's trade secrets to, and on behalf of, ITXPros without 360imaging's express or implied consent.

83.

As a direct and proximate result of the Former Employee Defendants' actions, 360imaging has suffered damages in an amount to be determined at trial.

84.

Pursuant to O.C.G.A. § 10-1-762(a), 360imaging asks this Court to enjoin Defendants, anyone acting in concert with them, and anyone who has received 360imaging's trade secrets from Defendants, from using any of 360imaging's trade secrets.

85.

Defendants' actions are willful and malicious in violation of O.C.G.A. §§ 10-1-763(b) and 764. Defendants are liable to 360imaging for actual damages, unjust enrichment, exemplary damages and attorney's fees, due to their violation of the Georgia Trade Secrets Act, pursuant to O.C.G.A. §§ 10-1-761(1) - (4), 10-1-763, 10-1-764.

## COUNT V – BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
### (Against all Former Employee Defendants)

86.

Plaintiff re-alleges and adopts Paragraphs 1-60 of this Verified Complaint.

87.

As employees of 360imaging, the Former Employee Defendants owed a fiduciary duty and duty of loyalty to 360imaging, which duties they breached by soliciting 360imaging's customers, diverting business opportunities and resources, and misappropriating 360imaging's confidential and proprietary information about its customers while still employed by 360imaging.

88.

As a direct and proximate result of the Former Employee Defendants' breaches of their fiduciary duty and duty of loyalty, 360imaging has been damaged by an amount to be determined at trial. Such damages include, but are not limited to, lost profits, and punitive damage.

## COUNT VI - THEFT AND CONVERSION
### (Against all Defendants)

89.

Plaintiff re-allege and adopts Paragraphs 1-60 of this Verified Complaint.

28

90.

Defendants have improperly taken and converted Plaintiff's property, including its computer files, designs, laptop, customer list, computer software and other property – both tangible and intangible, physical and electronic – and have thus engaged in unlawful theft and conversion.

91.

Plaintiff is entitled to recover all damages caused by Defendants' improper theft and conversion.

### COUNT VII – TORTIOUS INTERFERENCE WITH AND CONSPIRACY TO INTERFERE WITH PROSPECTIVE AND EXISTING CONTRACTUAL AND BUSINESS RELATIONS
### (Against all Defendants)

92.

Plaintiff re-allege and adopts Paragraphs 1-60 of this Verified Complaint.

93.

Defendants have tortiously interfered with Plaintiff's business and contractual relations with Defendants ElSayed, Samir and Azmy and the contractual and business relations between Plaintiff and its customers and prospective customers.

29

94.

Defendants utilized improper means to tortiously interfere with Plaintiff's contractual and business relations. Plaintiff is entitled to recover all damages permitted by law, including punitive damages, due to each of the Defendants' tortious interference with Plaintiff's contractual and business relations.

## COUNT VIII – EXEMPLARY DAMAGES

95.

Plaintiff re-allege and adopts Paragraphs 1-60 of this Verified Complaint.

Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences in violation of O.C.G.A. § 51-12-5.1

## COUNT IX – ATTORNEY'S FEES

96.

Plaintiff re-allege and adopts Paragraphs 1-60 of this Verified Complaint.

97.

Defendants have acted in bad faith, been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense, thereby entitling Plaintiff to an award of attorney's fees pursuant to O.C.G.A. § 13-6-11.

30

## COUNT X – VIOLATION OF NON-COMPETITION OBLIGATIONS

98.

Plaintiff re-alleges and adopts Paragraphs 1-60 of this Verified Complaint.

99.

Defendants ElSayed, Samir and Azmy breached the non-competition provisions in their respective Employment Agreements through their work with and for ITXPros.

100.

As a direct and proximate result of Defendants ElSayed's, Samir's and Azmy's continuing and repeated breaches of the non-compete provision, 360imaging has suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to its relationships with customers, and damage to its business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

101.

If injunctive relief is not granted to stop Defendants ElSayed's, Samir's and Azmy's breach of their non-competition obligations, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

31

102.

Plaintiff is entitled to a temporary restraining order and preliminary and permanent injunctive relief enjoining and restraining Defendants ElSayed, Samir and Azmy from violating the non-competition obligations in their Employment Agreements.

**WHEREFORE,** 360imaging respectfully prays for relief as follows:

(a) Temporary, interlocutory, and permanent injunctive relief enjoining Defendants ElSayed, Samir and Azmy from soliciting 360imaging's customers and prospective customers, from violating their non-competition obligations, and from using, disclosing, or possessing 360imaging's confidential and proprietary information and trade secrets;

(b) trial by jury;

(c) damages arising from the breaches of the Employment Agreement plus legal interest from the breach until the time of discovery;

(d) actual damages, unjust enrichment, and exemplary damages in an amount to be determined at trial;

32

(e) temporary, interlocutory and permanent injunctive relief enjoining Defendants and those in concert with them from further misappropriating, using, or disclosing Plaintiff's trade secrets;

(f) reasonable attorneys' fees, court costs, and all expenses incurred in this lawsuit;

(g) punitive damages; and

(h) any further relief the Court deems just and proper.


Respectfully submitted this **9th** day of November, 2021.

Matthew W. Clarke
Georgia Bar. No. 127430
William Long
Georgia Bar No. 457490
SMITH, GAMBRELL & RUSSELL
1105 W Peachtree St. NE
Suite 1000
Atlanta, GA 30309
(T): (404) 815-3767
(E): mclarke@sgrlaw.com

*Attorneys for Plaintiff*

33



## EMPLOYMENT AGREEMENT

This **EMPLOYMENT AGREEMENT** (the "*Agreement*"), is made and effective this 1st day of January 2021 (the "*Effective Date*"), by and between 360 Imaging, LLC, a Delaware limited liability company ("*Employer*"),and **Karim Mohamed ElSayed** ("*Employee*").

WHEREAS, Employer is an Atlanta, Georgia-based company that provides a wide range of products and services to dental practice clients, including without limitation treatment planning software for planning of implant cases, surgical guides, and digital lab services;

WHEREAS, Employee has served for Employer since approximately December 21, 2020 on an at-will basis;

WHEREAS, Employer wishes to secure Employee's employment for a set time period going forward, while also providing for the protection of Employer's customer relationships, goodwill, trade secrets, confidential information, and investment in any specialized training provided to Employee; and

WHEREAS, Employee desires to accept employment with Employer for a set time period upon the terms set forth herein and to provide assurances for the protection of Employer's customer relationships, goodwill, trade secrets, confidential information, and investment in any specialized training provided to Employee; and

WHEREAS, Employee acknowledges that he is required to sign this Agreement as a condition for receiving a guaranteed term of employment with Employer pursuant to the terms set forth herein;

NOW, THEREFORE, in consideration of the continued employment of Employee by Employer, the compensation paid by Employer to Employee, the disclosure by Employer to Employee of Confidential Information, the mutual covenants and promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and accepted, the parties hereto agree as follows:

1. **Employment Term.** The period of the contract is one year starting from the commencement date and automatic renewal allows the contract to continue for a similar period unless one of the parties shall notify in writing his desire to terminate this contract. Employee shall be employed by Employer in the position of Sales Representative unless earlier terminated in accordance with the provisions hereof.

2. **Employment Duties.**

Employee shall perform the duties and responsibilities listed on his communicated Job description and such other duties as may be reasonably directed from time to time by Employer's CEO or his or her designee. During the term of employment, Employee shall devote his or her full business time, attention, and energies to the business of Employer and shall use his or her best efforts in carrying out the duties of his or her employment.

1

During Employee's employment with Employer, Employee agrees to avoid any personal or business activities that are reasonably likely to (i) interfere with Employee's duties of employment, (ii) divide Employee's loyalty to Employer, or (iii) create or appear to create a conflict of interest for Employee. Without limiting the foregoing, Employee agrees that failure to comply with the provisions of this Agreement and/or the following covenants will constitute a violation of Employee's duty of loyalty. Employee shall advance the legitimate interests of Employer when the opportunity to do so arises. During the term of his or her employment, Employee shall not (a) take any opportunities for himself personally that are discovered through the use of information of Employer or his or her position with Employer or (b) use property or information of the Employer or his or her position with Employer for personal gain unrelated to his or her duties to Employer. Employee shall avoid any relationship or activity that may directly or indirectly impair his or her independence or judgment in connection with Employee's employment with Employer.

3.    **Definitions.** The capitalized terms in this Agreement are defined as follows, unless they are specifically defined elsewhere in the Agreement:

"*Business*" means the sale, marketing or provision of one or more of the following products or services to dental health providers: (a) treatment planning software for planning of implant cases; (b) surgical guides; and/or (c) digital lab services;

"*Cause*" means and includes a reasonable good faith determination by the Board of Directors of Employer of one or more of the following acts or omissions by Employee: (i) an intentional act of fraud, embezzlement, theft or any other material violation of law in connection with the subject matter of this Agreement; (ii) a conviction of a felony or of a misdemeanor involving moral turpitude; (iii) intentional damage to Employer's assets; (iv) intentional disclosure of Confidential Information in violation of this Agreement; (v) a material breach of any material obligation(s) under this Agreement; (vi) the willful and continued failure to substantially perform employment duties; (vii) the causation of significant financial injury to Employer; and (viii) a willful or grossly negligent act that is likely to materially harm the reputation or goodwill of Employer.

"*Client*" shall mean and include a Person (i) to or for whom Employer provides products or services in connection with the Business; (ii) with whom Employer contracts for the provision of products or services in connection with Business; or (iii) who Employer is actively soliciting for the purpose of providing products or services in connection with the Business;

"*Competing Activity*" means and includes any business or professional activity that is the same or similar to those actually conducted by Employee on behalf of Employer at any time within the two years immediately prior to Termination, including without limitation those job duties listed on Exhibit "A" hereto;

"*Competing Business*" means any Person, other than Employer, engaged in the Business;

"*Confidential Information*" means information and the compilation of information, in tangible or intangible form, that pertains to Employer's business, has value to Employer, and is not available to or readily ascertainable by persons or entities other than Employer or its

2

employees and agents. Assuming that foregoing criteria are met, Confidential Information includes, but is not limited to, the following: Trade Secrets; names of Clients or Former Clients; compilations of information concerning Clients or Former Clients; lists of past and present Clients or Former Clients; information contained in past and present accounts of Clients or Former Clients; the volume of business and the nature of the business relationship between Employer and its Clients or Former Clients; Employer's business plans and strategies; the description of future services that are or may be provided by Employer; Employer's financial, marketing and sales information; technical expertise, formulas, processes and know-how, including but not limited to the unique manner in which Employer conducts business; the terms of any agreements or arrangements with past or present Clients or Former Clients, including the amounts paid for such services or how such prices were determined; forms of agreements; financial statements of Employer and the information contained therein; Employer's tax filings and the information contained therein; financial data of any kind relating to Employer; personnel records and the information contained therein, such as compensation information and employee review information; confidential materials pertaining to legal matters; cost, pricing and billing information; the methods and systems used by Employer; the business profiles of Clients or Former Clients; financial policies and procedures; revenues and profit margins; passwords, log-in IDs, or any other information relating to Employer's computer or electronic data systems; and training procedures and materials. Confidential Information does not have to be marked as "Confidential" or "Proprietary" to qualify for protection under this Agreement. Confidential Information shall also include information which has been disclosed to Employer by any third party, as to which Employer has an obligation to the third party to treat as confidential. "Confidential Information" shall not include any information that (a) was or becomes generally available to the public prior to, and other than as a result of, a disclosure by Employee, or (b) was available, or becomes available, to Employee on a non-confidential basis from a source other than Employer, but only if the source of such information is not bound by a confidentiality agreement with Employer or is not otherwise prohibited from transmitting the information to Employee by a contractual, legal, fiduciary or other obligation.

"*Former Clients*" shall mean and include a Person who is not a Client but (i) to or for whom Employer has at any time provided products or services in connection with the Business; (ii) with whom Employer has contracted at any time for the provision of products or services in connection with Business; or (iii) who Employer has at any time actively solicited for the purpose of providing products or services in connection with the Business.

"*Intellectual Property*" shall mean any creations, concepts, techniques, inventions, processes or works of authorship including any work whether protectable or not by patent, trademark, copyright or as a Trade Secret, created in the course of employment whether during work hours or not or, at the place of employment or elsewhere, relating in any way to the subject nature of the Employer.

"*Person*" as used in this Agreement means an individual or a corporation, limited liability company, partnership, joint venture, association, non-profit organization, joint-stock company, trust, unincorporated organization or other legally recognized entity of any kind.

xerox imaging

"*Restricted Client*" shall mean any Client (a) with whom Employee had business dealings with on behalf of Employer during his or her employment with Employer; (b) whose dealings with Employer were coordinated or supervised by Employee during his or her employment with Employer; or (c) about whom Employee obtained confidential information in the ordinary course of business as a result of Employee's association with Employer;

"*Restricted Period*" shall mean twelve (12) months from the date of Termination;

"*Termination*" means the termination of Employee's employment with Employer, for any reason whatsoever, whether for Cause, without Cause, or for any other reason, upon the initiative of either party.

"Territory" means and includes the following: (a) the geographic area located within a 50-mile radius of any location at which Employee provided services at any time within the one-year period immediately prior to Termination; (b) the geographic area located within a 50-mile radius of an office of a Restricted Customer; and (c) the geographic area within a 50- mile radius of any location at or to which Employee provided products or services as an employee of Employer within the one-year period immediately prior to Termination.

"*Trade Secret*" shall mean information belonging to Employer, including, but not limited to, technical or non-technical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or lists of actual or potential clients or suppliers, which:

    (a) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.



**Termination.** Employer may terminate Employee's employment for Cause at any time and with no prior notice. In the event of a termination by Employer for Cause, Employer shall be required only to pay Employee his or her base salary earned through the date of such termination, but Employee shall not be entitled to any further compensation or benefits.

Employer may terminate Employee's employment without Cause prior to the expiration of the Initial Term upon 30 days' notice.

**Purpose of Restrictive Covenants.** Employee acknowledges and agrees that Employer is engaged in the Business. Employee acknowledges and agrees that by virtue of Employee's employment with the Employer, Employee will be provided and have access to confidential,

4

proprietary, and highly sensitive information relating to the business of Employer and that is a valuable, competitive and unique asset of Employer, the confidentiality of which is essential to Employer to differentiate its products and services. Employee acknowledges and agrees that the categories of information listed in the definition of Confidential Information constitute valuable, special and unique property of Employer are not available to or readily ascertainable by the public. Employee further acknowledges and agrees that Employee's position will necessitate a high level of interaction between Employee and Employer's clients and employees, and Employee may be one of the primary contacts with a client on behalf of Employer; accordingly, there is a high risk and opportunity for Employee to misappropriate the relationship and goodwill existing between Employer and its clients. Thus, the purposes of this Agreement include without limitation, the following: (a) the protection from use or disclosure to third-parties of non-public information relating to Employer's business; (b) the protection of unfair appropriation of Employer's goodwill and information acquired by or which will be acquired by Employee during his or her employment; (c) the protection of Employer's business relationships that have been or will be developed or nurtured or managed by the Employee during his or her employ by the Employer; and (d) the protection of Employer's investment in any specialized training provided to Employee.

5.    **Agreement Not to Disclose Confidential Information.** All Confidential Information received, obtained or produced by Employee while employed by Employer is confidential to and shall remain the sole and exclusive property of Employer. During the term of Employee's employment by Employer and for so long after Termination as the Confidential Information continues to qualify as such, Employee shall hold all Confidential Information in trust and strictest confidence, and shall not use, reproduce, distribute, disclose or otherwise disseminate Confidential Information outside of the scope of Employee's duties for Employer without the prior express, written consent of Employer. Employee may in no event take any action causing or fail to take action necessary in order to prevent any Confidential Information to lose its confidential character or cease to qualify as Confidential Information. Nothing herein shall be interpreted as a limitation or restriction on the provisions of state or federal trade secrets statutes or any legal rights or remedies granted thereunder.

6.    **Return of Employer's Property.** Employee acknowledges and agrees that all memoranda, notes, correspondence, databases, computer discs, computer files, computer entries, computer equipment and/or accessories, tablets, smartphones, storage devices, telephones, passwords or pass codes, user IDs, records, reports, manuals, books, papers, letters, keys, Internet database access codes, client profile data, job orders, client lists, contracts, software programs, information and records, drafts of instructions, guides and manuals, and other equipment, property, documentation (whether in draft or final form), Trade Secrets, Confidential Information, and other sales, financial or technological information relating to the Employer's business, and any and all other documents or things furnished to Employee by any representative of the Employer or otherwise acquired, created or developed by him in connection with his or her association with the Employer (collectively, "*Employer's Property*") shall at all times be the property of the Employer. Within twenty-four (24) hours of Termination, Employee will return to Employer any of Employer's Property in Employee's possession, custody or control.

5

7.    **Agreement Not to Compete.** During the term of Employee's employment and for the Restricted Period, Employee shall not engage in a Competing Activity in the Territory for a Competing Business.

8.    **Agreement Not to Solicit Clients.** During the term of Employee's employment and for the Restricted Period, Employee shall not, directly or by assisting others, solicit, attempt to solicit, call upon, divert, or initiate contact or communication with any Restricted Client on behalf of a Competing Business for the purpose of selling or providing, or attempting to sell or provide, any service or product that is the same as or competitive or potentially competitive with any product or service sold or provided by Employer.

9.    **Agreement Not to Solicit Employees.** During the term of Employee's employment by Employer, Employee shall not, either directly or indirectly, solicit, encourage or divert or attempt to solicit, encourage or divert any person employed by Employer for the purpose of having such person perform duties of any nature for another Person. During the Restricted Period, Employee shall not, either directly or indirectly, on Employee's own behalf, or on behalf of any other person or entity, solicit, divert, encourage, or attempt to solicit, divert or encourage, or in any manner cause any person employed by Employer to discontinue employment with Employer, except that the restriction of this sentence shall apply only to those employees managed by Employee, either directly or indirectly, or with whom Employee had contact in the course of Employee's employment by Employer.

10.   **Disclosure of Agreement.** Employee agrees, represents and covenants that prior to accepting any offer for employment after Termination, Employee will disclose this Agreement to any prospective employer to ensure that such prospective employer is aware of such provisions and the obligations imposed thereby.

11.   **Ownership of Intellectual Property in Employee's Creations and Developments.** Employee acknowledges that he may have created and may in the future create Intellectual Property for Employer in connection with his or her employment. Employee agrees that all worldwide rights in any such Intellectual Property created by Employee belong to or shall belong to Employer as a work for hire, if applicable, otherwise by assignment, and Employee agrees to execute such other documents as may be needed to evidence the assignment of those rights. To the extent such Intellectual Property may not be considered work made for hire by Employee for Employer, Employee agrees to assign, and does hereby automatically assign at the time of creation of such Intellectual Property, without any requirement of further consideration, all right, title or interest Employee may have in such Intellectual Property, including the right to make derivative works, to Employer. Employee hereby waives so called "moral rights" in such Intellectual Property in those jurisdictions which have such rights, and if such rights cannot be waived hereby agrees to transfer them to Employer.

12.   **Notification of Rights Under Federal Defend Trade Secrets Act of 2016.** Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret made in confidence to any federal, state, or local government official, either directly or indirectly, or to an attorney, provided such disclosure was (1) made solely for the purpose of reporting or investigating a suspected violation of law; or (2) made in a

6

complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Furthermore, if Employee files a lawsuit against the Company for retaliation for reporting a suspected violation of law, Employee may disclose the trade secret to his or her attorney and may use the trade secret in the court proceeding if Employee files any document containing the trade secret under seal and does not disclose the trade secret except pursuant to court order.

13.  **Remedies.** The parties acknowledge that a breach or threatened breach of any of the terms of the post-employment restrictive covenants of this Agreement by Employee would result in material and irreparable damage and injury to Employer and that it would be difficult or impossible to establish the full monetary value of such damage. Therefore, Employee specifically acknowledges, consents and agrees that Employer will be entitled to injunctive relief by a court of appropriate jurisdiction in the event of Employee's breach or threatened breach of any of the terms hereof. Employer's right to an injunction will not prohibit Employer from pursuing other remedies, including the recovery of monetary damages. It shall not be a defense to any action hereunder that Employee has a claim against Employer under this Agreement or otherwise.

14.  **Severability.** It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible. Accordingly, if any particular paragraph(s), subparagraph(s) or portion(s) of this Agreement shall be adjudicated to be invalid or unenforceable as written, such paragraph(s), subparagraph(s) or portion(s) shall be modified to the extent necessary to be valid or enforceable. Such modification shall not affect the remaining provisions of this Agreement. To the extent any paragraph(s), subparagraph(s) or portion(s) of this Agreement found invalid or unenforceable cannot be modified to be made valid or enforceable, then the Agreement shall be construed as if that paragraph(s), subparagraph(s) or portion(s) were deleted, and all remaining terms and provisions shall be enforceable in law or equity in accordance with their terms.

15.  **Waiver.** The waiver by Employer of any breach of this Agreement by Employee shall not be effective unless in writing and signed by Employer, and no such waiver shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion.

16.  **Governing Law and Jurisdiction.** This Agreement shall be governed by the laws of the State of Georgia. The parties agree the appropriate State or Federal courts in Fulton County, Georgia shall have jurisdiction and venue for all disputes between the parties under this Agreement. Employee hereby irrevocably consents to the jurisdiction and venue of the State and Federal courts within Fulton County, Georgia, for adjudication of disputes between the parties under this Agreement. Employee hereby waives any objections or defenses to jurisdiction or venue in any such proceeding before such court. The parties hereby agree that the governing law and venue set forth in this Section is expressly, knowingly and voluntarily agreed to by the parties.

17.  **Entire Agreement; Modification.** This Agreement constitutes the entire agreement regarding its subject matter and may not be modified or amended in any way except in writing and with the mutual consent of Employee and Employer. This Agreement supersedes.

and replaces any prior agreement or agreements of employment, confidentiality, nondisclosure, none-competition or no-solicitation between Employer and Employee.

18.   **Multiple, Counterparts and Electronic Execution.**  This Agreement may be executed in multiple original or electronic counterparts, each of which shall be enforceable against the party signing it, and signature pages transmitted by facsimile, email, Adobe EchoSign or other electronic means shall have the same force and effect as delivery of an original signature.

19.   **Survival and Enforcement.**  Any and all covenants set forth herein relating to any post-termination obligations of Employee shall survive and be enforceable in law and/or equity after Termination. Employee agrees and represents that enforcement of this Agreement will not present or result in any undue economic hardship on Employee, and Employee has willingly and knowingly considered the risk of any hardship that might result from enforcement of this Agreement in deciding to execute the Agreement and continue employment with Employer.

20.   **Binding Effect.**  All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by any successors (including any successor as a result of a corporate merger, acquisition or similar reorganization) and assigns of Employer.

THE UNDERSIGNED EMPLOYEE ACKNOWLEDGES THAT HE HAS READ AND UNDERSTANDS THIS TERMS OF THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ITS CONFIDENTIAL INFORMATION, COVENANT NOT TO COMPETE, NONSOLICITATION, NONRECRUITMENT AND DUTY OF LOYALTY PROVISIONS, AND THAT HE SIGNS THIS AGREEMENT INTENDING TO BE BOUND BY ITS TERMS AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE. EMPLOYEE FURTHER ACKNOWLEDGES THAT HE HAS HAD AN OPPORTUNITY, IF HE SO CHOSE, TO CONSULT WITH AN ATTORNEY CONCERNING THE TERMS OF THIS AGREEMENT PRIOR TO HIS OR HER EXECUTION OF SAME.

"EMPLOYEE"

Karim Mohamed ElSayed
Date: _____ 16/11/2025 _____

"EMPLOYER"
360 IMAGING, LLC

By _____ Yahia Megahed _____
Name: Yahia Megahed
Title: CEO

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| 360 IMAGING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | |
| | ) | |
| ITXPROS DENTAL, INC., | ) | |
| ITXPROS LLC, | ) | |
| KARIM MOHAMED ELSAYED, | ) | |
| AHMED KHATER, | ) | |
| HUSSEIN TAREK, | ) | |
| SARA AMIN, | ) | |
| SHENOUDA SAMIR, | ) | |
| BASEM TAREK, | ) | |
| AYA ABDEL KADER MOUSTAFA, and | ) | |
| MARAM ALAA ELDIN AZMY, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION

Personally appeared before me, the undersigned officer duly authorized to administer oaths, the individual signatory below who, upon being duly sworn, depose, and state on oath that the facts and information contained in the foregoing Verified Complaint are true and accurate to the best of his knowledge, information and belief.

_Yahia Megahed_
360imaging, LLC
Yahia Megahed
Chief Executive Officer

Sworn to and subscribed before me
this 08 day of Nov , 2021.

_Carolyn Mill_
Notary Public
My Commission Expires : 12/10/2022

CASEY LYNN MILLS
NOTARY PUBLIC
Exp. Dec. 10, 2022
FULTON COUNTY, GA

# EXHIBIT C

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| 360 IMAGING, LLC , | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 2021CV356723 |
| vs. | : | |
| | : | |
| ITXPROS DENTAL, INC., ITXPROS LLC, | : | |
| KARIM MOHAMED ELSAYED, AHMED | : | |
| KHATER, HUSSEIN TAREK, SARA | : | |
| AMIN, SHENOUDA SAMIR, BASEM | : | |
| TAREK, AYA ABDEL KADER | : | |
| MOUSTAFA, and MARAM ALAA ELDIN | : | |
| AZMY, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION AND BRIEF IN SUPPORT**

COMES NOW Plaintiff 360 Imaging, LLC ("Plaintiff" or "360imaging") and respectfully submits this Motion for Temporary Restraining Order and Interlocutory Injunction and Brief in Support, as pled in its Verified Complaint and in the supporting Affidavit from Yahia Megahed, by showing this Court as follows:

## I.      INTRODUCTION

This action arises in the context of Defendants' improper and unlawful misappropriation of 360imaging's trade secrets, proprietary software and confidential information to benefit and assist Plaintiff's direct competitor, and the

irreparable harm that threatens 360imaging's business as a result. 360imaging seeks immediate relief through a temporary restraining order and interlocutory injunction to prevent the use and further dissemination of Plaintiff's confidential and proprietary information to unfairly compete and irreparably damage Plaintiff's business prospects and relationships.

Plaintiff requests that the Court enjoin Defendants from using, disseminating, and retaining Plaintiff's trade secrets and from soliciting Plaintiff's customers and prospective customers with whom Defendants had material contact or about whom Defendants obtained information while employed by 360imaging. As grounds therefore, Plaintiff respectfully states as follows. Plaintiff further incorporates its Verified Complaint as if fully set forth herein.[1]

## II.    FACTUAL BACKGROUND

### A. 360imaging's Business and Defendants' Employment

360imaging is a Georgia limited liability company principally engaged in the business of creating and utilizing computer software, laboratories and products to aid dental surgeons and other professionals and patients in the field of dental implants. (Compl. ¶ 7) 360imaging is a national provider of products and services to dental health providers, including creation and use of proprietary treatment

---

[1] A verified complaint serves as both pleading and evidence and can be used as evidence to support the entry of injunctive relief. *BEA Systems, Inc. v. Webmethods, Inc.*, 265 Ga. App. 503, 504 (2006).

SGR/26542568.1

planning software for the planning of implant cases, surgical guides, and digital lab services (hereinafter "360imaging's business"). (*Id.* ¶ 20)

Defendants Karim Mohamed ElSayed ("Defendant ElSayed"), Shenouda Samir ("Defendant Samir") and Maram Alaa Eldin Azmy ("Defendant Azmy") worked on proprietary and confidential proposals and presentation materials for 360imaging's clients and potential clients, reviewed customer cases and orders, and had access to 360imaging's confidential and proprietary information, including its pricing, costs, and surgical guides. (*Id.* ¶ 23)

Defendant ElSayed began employment with 360imaging on or about December 21, 2020 as a business development manager and sales representative. (*Id.* ¶ 24, 30) ElSayed was responsible for contacting current and potential customers to develop new business. (*Id.* ¶ 22) In his role Defendant ElSayed solicited customers and prospective customers for 360imaging. (*Id.*) Mr. ElSayed resigned employment on or about May 31, 2021. (*Id.* ¶ 24).

Defendant Samir worked for 360imaging as a segmentation specialist responsible for performing clinical operations on client cases and designing Plaintiff's final product. (*Id.* ¶ 25) Defendant Samir was terminated from employment with 360imaging on or about November 2, 2021 after Plaintiff discovered that he had been conspiring with, working for and assisting Defendant

SGR/26542568.1

ITXPros and the other former employee Defendants while employed at 360imaging. (*Id.*)

Defendant Azmy worked for 360imaging as a treatment planner, planning and designing doctor cases, and she was regularly in contact with Plaintiff's customers. (*Id.* ¶ 26) Defendant Azmy resigned her employment on or about September 14, 2021. (*Id.*) While still employed by 360imaging, Azmy worked for or otherwise assisted Defendant ITXPros in a manner designed to benefit ITXPros to the detriment and damage of Plaintiff. (Compl. ¶ 45)

### B. 360imaging's Trade Secrets and other Confidential Information

Plaintiff's trade secrets and confidential information include, but are not necessarily limited to, proprietary company software including 360DPS (treatment planning software) and 360Courier (the company's CRM and order management system), customer list and customer order history, product design files, and company product manuals, presentations and other confidential materials. (*Id*. ¶ 27)

360imaging developed, owns and utilizes a proprietary software program to offer its customers digital planning software for use in determining and implementing dental implant patient treatment. (*Id*. ¶ 46) This includes the use of three-dimensional computer imaging to ensure ideal assessment of bone and prosthetic issues as well as the creation of proprietary surgical guides to facilitate

SGR/26542568.1

patient treatment. (*Id.*) The software that was developed and is marketed and utilized by 360imaging is an important, material part of 360imaging's business. (*Id.* ¶ 47) It constitutes confidential information not known to the public generally. (*Id.*)

At all times pertinent, 360imaging has taken measures that are reasonable under the circumstances to protect and maintain the secrecy of its confidential business information and trade secrets, including, but not limited to: password protecting its computers and other electronic devices that are capable of accessing 360imaging's networks and systems that house such information and data; prohibiting the use of company electronics for personal reasons; restricting the use of personal electronic devices for work-related purposes; prohibiting the copying, transfer, or other appropriation of trade secret and confidential information; and requiring the return of all confidential and trade secret data upon termination of employment. (*Id.* ¶ 56).

360imaging has implemented computer security measures to limit access to and maintain the secrecy of its confidential business information and trade secrets. (*Id.* ¶ 57) 360imaging email accounts are protected by requiring users to have a unique username and password and to use multi-factor authentication. (*Id.*) And 360imaging's file server data can only be accessed by a computer or mobile device with specific software and user access requires a unique username and password as

well as multi-factor authentication. (*Id*.) Other databases and software used by 360imaging are also protected by username and password requirements. (*Id.*)

360imaging's confidential and proprietary information and other trade secrets are not commonly known by or available to the public. (*Id*. ¶ 58) Plaintiff's confidential and proprietary information derives economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from disclosure. (*Id*. ¶ 59)

### C. The Restrictive Covenants

Effective on or about January 1, 2021, 360imaging and Defendants ElSayed, Samir and Azmy entered into written Employment Agreements. (*Id*. ¶ 30–31, Exhibit A to Compl., Exhibit A and B to Megahed Aff.) Because they contain the same restrictive covenant language, the Employment Agreements of Defendants ElSayed, Samir and Azmy are hereinafter referred to jointly and severally as the "Employment Agreements" or "the Agreements."

The Agreements: 1) offer protection from use or disclosure to third parties of non-public information relating to Plaintiff's business, 2) protect against unfair appropriation of Plaintiff's goodwill and information acquired during Defendants' employment; 3) protect Plaintiff's business relationships that have been or will be developed, and 4) protect the Plaintiff's investment in any specialized training

SGR/26542568.1

provided to its employees. (Exhibit A to Compl. at 4–5, Exhibit A and B to Megahed Aff. at 4–5)

In order to protect Plaintiff's confidential information, the Agreements also include a provision prohibiting the use, reproduction, distribution, disclosure or dissemination of 360imaging's confidential information. (Exhibit A to Compl. at 5, Exhibit A and B to Megahed Aff. at 5) Within twenty-four hours after termination, employees are required to return Plaintiff's property, including computer equipment and software. (*Id.*) The Employment Agreements also provide that, during the term of an employee's employment and for a restricted period afterward, 360imaging employee's "shall not engage in a competing activity in the Territory for a Competing Business." (Compl. ¶ 33) Plaintiff's "Territory" includes the 50-mile radius of "any location at or to which an employee provided products or services as an employee of Plaintiff" (Exhibit A to Compl. at 4 Exhibit A and B to Megahed Aff. at 4), and a "Competing Business" is any entity, other than 360imaging, engaged in the sale, marketing or provision of dental health treatment planning software, surgical guides and/or digital lab services. (*Id.* at 2) ITXPros advertises as a business for dental professionals that provides dental treatment planning, surgical guide design and digital planning design. (Megahed Aff. ¶ 17)

Additionally, under the Agreements, an employee could not "directly or by assisting others, solicit, attempt to solicit, call upon, divert, or initiate contact or

SGR/26542568.1

communication with any Restricted Client on behalf of a Competing Business" to sell or provide any service or product the same as, competitive or potentially competitive to services and products sold by 360imaging. (Compl. ¶ 33, Exhibit A to Compl. at 6, Exhibit A and B to Megahed Aff. at 6)

Former employee Defendants other than Defendants ElSayed, Samir and Azmy ("Former Employee Defendants") were also presented with an employment agreement substantially similar in form and content to the Employment Agreements signed by Defendants ElSayed, Samir and Azmy. (Compl. ¶ 53) However, those Former Employee Defendants refused to sign the agreements, quit their employment, and soon thereafter operated ITXPros as a direct competitor to 360imaging. (*Id.*) Former Employee Defendants began their work for ITXPros while still employed by 360imaging and thereafter. (*Id.*)

Plaintiff has legitimate business interests that justify enforcement of the restrictive covenants with Defendants ElSayed, Samir and Azmy. (*Id.* ¶ 35) The restrictive covenants contained in the Employment Agreements with Defendants ElSayed, Samir and Azmy protect 360imaging's trade secrets and confidential and proprietary information, its substantial relationships with prospective and existing customers, and customer and client goodwill associated with its business, including but not limited to its name and marketing or trade area and specialized training provided by 360imaging. (*Id.* ¶ 35)

SGR/26542568.1

## D. Defendants' Separation and Unlawful Conduct

In addition to copying Plaintiff's confidential and propriety information, Defendants used 360imaging's design files to create a product that they market as identical to 360imaging products. (Compl. ¶ 49, Megahed Aff. ¶ 19, Exhibits D, E and G to Megahed Aff.) Specifically, Defendants ElSayed, Samir and Azmy violated the covenants of their Employment Agreements by using, reproducing, distributing and disclosing Plaintiff's confidential information to a competing business, ITXPros.

Defendant ElSayed solicited business away from 360imaging by touting ITXPros' use of the same 3D digital imaging, surgical planning guides and proprietary techniques for reviewing and managing customer cases and orders that Defendants copied through access to Plaintiff's information, while also claiming that ITXPros could offer the same products at a cheaper price. (Compl. ¶ 50) One of Plaintiff's clients sent a screen image showing a text message from ElSayed, trying to persuade the client to bring his work to ITXPros. (*See* Exhibit C to Megahed Aff.) (showing ElSayed's claims that ITXPros has "less expensive prices than what you [the Client] pay now," and advertising "better turnaround time")

Defendant Samir improperly and without authorization copied Plaintiff's proprietary computer software onto his personal computer. (Compl. ¶ 28) Samir admitted to Plaintiff that he utilized Plaintiff's proprietary software for, on behalf

SGR/26542568.1

of, and for the benefit of Defendant ITXPros. (*Id.*) Upon demand by Plaintiff, he purportedly deleted such software from his computer but it is currently unknown whether Defendant Samir made or has another copy of Plaintiff's proprietary software. (*Id.*)

Defendant Azmy resigned her employment on or about September 14, 2021. (*Id.* ¶ 26) After resigning employment, 360imaging instructed Azmy to return her 360imaging company-issued laptop computer to Plaintiff, but Defendant Azmy failed and refused to, thereby maintaining copies of Plaintiff's trade secrets and other confidential and proprietary information on the laptop. (*Id.* ¶ 27)

Defendants ElSayed, Samir and Azmy have violated the non-solicitation provisions of their Employment Agreements by contacting and soliciting 360imaging's customers with whom they had contact during employment with Plaintiff and they have diverted business from 360imaging to ITXPros. (*Id.* ¶ 36–37) Defendant ITXPros was and is aware of Defendants ElSayed, Samir and Azmy's restrictive covenants to 360imaging. (*Id.* ¶ 38) ITXPros has caused or permitted Defendants ElSayed, Samir and Azmy to breach their contractual obligations to 360imaging. (*Id.* ¶ 39)

Each of the Former Employee Defendants had access to Plaintiff's confidential customer list, customer-related information, and other confidential information and trade secrets of Plaintiff during their employment with Plaintiff.

SGR/26542568.1

(*Id.* ¶ 29) Each of the Former Employee Defendants improperly misappropriated such trade secrets and conspired with Defendants ElSayed, Samir and Azmy to violate their Employment Agreements. (*Id.*) For example, Defendant Hussein Tarek ("Defendant H. Tarek"), upon information and belief, copied 360imaging's proprietary and confidential software and disclosed and provided it to Defendant ITXPros for utilization. (*Id.* ¶ 54, Megahed Aff. ¶ 24) Defendant Aya Moustafa emailed herself Plaintiff's master design files for its anatomic guide product. (Megahed Aff. ¶ 23, Exhibit H to Megahed Aff.) Defendant Ahmed Khater assisted ITXPros to provide services to one of 360imaging's former clients. (Megahed Aff. ¶ 20, Exhibit F to Megahed Aff.) And Defendant Sara Amin ("Defendant Amin"), like Defendant Azmy, refused to return her 360imaging company-issued laptop upon termination of employment with Plaintiff. (Compl. ¶ 55) Upon information and belief, Amin has disclosed the trade secret information from 360imaging's laptop to ITXPros and Defendants are improperly using Plaintiff's trade secrets to Plaintiff's material detriment. (*Id.*)

Plaintiff's computer tracking systems have identified the unlicensed use of 360imaging software in over ten treatment cases. (Megahed Aff. ¶ 26) And ITXPros' customer list features several former customers of 360imaging, many of whom had material contact with Former Employee Defendants while they were employed with Plaintiff. (*Id.* ¶ 25) As a direct and proximate result of Defendants'

SGR/26542568.1

unlawful misappropriation of confidential trade secrets and solicitation of 360imaging's customers, 360imaging has suffered and continues to suffer irreparable damages and other harm which cannot adequately be remedied through monetary relief alone.

## III.   ARGUMENT AND CITATION OF AUTHORITY

As shown more fully below, 360imaging will continue to suffer irreparable harm due to the theft of its trade secrets and confidential information unless this Court enjoins the Defendants.

### A. Standard for Interlocutory Injunction

An interlocutory injunction may be issued to maintain the status quo if, after balancing the equities of the parties, it appears the equities favor the party seeking the injunction. The trial court's exercise of its discretion will not be disturbed by an appellate court unless a manifest abuse of that discretion is shown or unless there was no evidence on which to base the ruling. *Nguyen v. Tran*, 287 Ga. App. 888 (2007) (citation omitted). The Georgia Trade Secrets Act ("GTSA") provides for injunctive relief when an injunction is necessary to eliminate a "commercial advantage that otherwise would be derived from the misappropriation or where the trade secret ceases to exist due to the fault of the enjoined party or others by improper means." O.C.G.A. § 10-1-762(a). In determining whether preliminary injunctive relief is appropriate generally, the Court must consider the following:

SGR/26542568.1

(1) whether there is a substantial likelihood that the moving party will prevail on the merits of its claims at trial;

(2) whether there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted;

(3) whether the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; and

(4) whether granting the injunction will not disserve the public interest.

*Holton v. Physician Oncology Servs., LP*, 292 Ga. 864, 866–67 (2013) (citing *SRB Investment Servs., LLP v. Branch Banking & Trust Co.*, 289 Ga. 1, 5 (2011)). Here, each of these factors support granting injunctive relief to 360imaging. This Brief addresses each in turn.

## B. Substantial Likelihood of Success on the Merits

### 1. Defendants misappropriated trade secrets and confidential information.

360imaging will likely be successful on the merits, because Defendants unlawfully retained, copied, and shared Plaintiff's proprietary and confidential information. These actions constitute clear violations of the GTSA. A claim for misappropriation of trade secrets under the GTSA requires that Plaintiff prove 1) that it had a trade secret, and 2) the opposing parties misappropriated the trade secret. O.C.G.A. § 10-1-760 *et seq*. "Trade secrets" are defined as confidential, proprietary information not commonly known to the public that (A) derives economic value, actual or potential, from not being generally known to, and not

SGR/26542568.1

being readily ascertainable by proper means by, other persons who can obtain

economic value from its disclosure or use; and (B) is the subject of efforts that are

reasonable under the circumstances to maintain its secrecy. O.C.G.A. § 10-1-

761(4). For example, the GTSA notes that current and prospective customer lists

are examples of trade secrets. O.C.G.A. § 10-1-761(4); *see Degiorgio v. Megabyte

Int'l*, 266 Ga. 539, 540 (1996) (holding that "tangible lists of customers and

suppliers are the property of the employer and warrant protection as trade secrets.")

Here, Plaintiff has trade secrets and Defendants misappropriated Plaintiff's

trade secrets by divulging confidential information learned through their

employment to Plaintiff's competitor, ITXPros. Defendant Samir admitted to

copying and forwarding Plaintiff's proprietary computer software onto his personal

computer. (Compl. ¶ 28) Defendant H. Tarek also copied and retained Plaintiff's

proprietary software. (Megahed Aff. ¶ 24) The software constitutes a trade secret

under Georgia law. Additionally, Defendant Azmy failed and refused to return her

360imaging company-issued laptop computer, which has Plaintiff's confidential

and proprietary information, including its customer lists, on it. (Compl. ¶ 27) And

Defendant Amin also refused to return her company-issued laptop computer. (*Id.* ¶

55) These company computers were meant to be returned to Plaintiff within

twenty-four hours of termination and they contain Plaintiff's trade secrets.

SGR/26542568.1

Defendants now work for or assist a direct competitor of 360imaging. (Compl. ¶ 53) Upon information and belief, Defendants supplied Plaintiff's proprietary software and trade secret information to ITXPros to the detriment of Plaintiff's business. 360imaging took reasonable steps to maintain the secrecy of this information by utilizing access control tools like unique username and password requirements, multi-factor authentication and device software requirements. *See Capital Inventory v. Green*, 2021 WL 2452650 at *4 (N.D. Ga. Feb. 5, 2021) (highlighting that passwords and other proprietary entry devices were sufficient to show that an employer took reasonable steps to protect its confidential information).

Defendants used improper means to retain and copy Plaintiff's trade secrets. Defendants have stolen Plaintiff's property, including its computer files, designs, laptops, customer list, computer software and other property – both tangible and intangible, physical and electronic. The customer lists, software and information about customers, patients, surgical guides and treatment plans that the Defendant former employees copied and/or took constitute trade secrets as defined under the GTSA. O.C.G.A. §§ 10-1-760 *et seq.*

2. Defendants are soliciting 360imaging customers.

Defendant ElSayed, among other former employee defendants, has solicited business and customers away from 360imaging, in violation of ElSayed's

SGR/26542568.1

restrictive covenants with Plaintiff and Georgia law. Customer non-solicitation

provisions are enforceable under Georgia law. Under Georgia's Restrictive

Covenant Act (the "RCA")

> "an employee may agree in writing for the benefit of an employer to refrain, for a stated period of time following termination, from soliciting, or attempting to solicit, directly or by assisting others, any business from any of such employer's customers, including actively seeking prospective customers with whom the employee had material contact during his or her employment for purposes of providing products or services that are competitive with those provided by the employer's business." O.C.G.A. § 13-8-53(b).

Here, Plaintiff's customer non-solicitation provision is presumptively

reasonable, because it lasts only twelve months after termination of employment.

(Exhibit A to Compl. at 4, Exhibit A and B to Megahed Aff. at 4) Under Georgia

law, "a court shall presume to be reasonable in time any restraint two years or less

in duration." O.C.G.A. § 13-8-57(b). Furthermore, the provision adheres to the

requirements of the RCA. The non-solicitation provision only applies to a

"Restricted Client," defined as a client with whom the employee had material

contact and business dealings during employment with 360imaging. (Exhibit A to

Compl. at 4, Exhibit A and B to Megahed Aff. at 4) Therefore, Plaintiff's non-

solicitation provision satisfies the RCA by constraining restricted clients to those

that the employee dealt with specifically.

Despite their non-solicitation obligations, Defendants ElSayed, Samir and

Azmy have contacted and solicited 360imaging's customers with whom they had

material contact during employment with Plaintiff and have diverted business away from 360imaging. In fact, a text message sent to Plaintiff by its client reveals Defendant ElSayed directly contacting the client to persuade him to work with ITXPros instead. (Megahed Aff. ¶ 18, Exhibit C to Megahed Aff.) Former employee defendants kept and are using Plaintiff's confidential customer contact information to solicit 360imaging customers and potential customers on behalf of and with the knowledge and participation of Defendant ITXPros. (Compl. ¶ 42)

Because Defendants misappropriated Plaintiff's confidential and proprietary information learned through their employment, 360imaging will almost certainly prevail on its claims against Defendants ElSayed, Samir and Azmy for breach of contract and for its claim under the Georgia Trade Secrets Act. Therefore, Plaintiff's request for a restraining order and injunctive relief should be granted.

### C. The Balance of Harms Favors 360imaging

Without injunctive relief, 360imaging's business will suffer. Defendants have retained Plaintiff's company-issued laptops and copied Plaintiff's proprietary software, items that constitute trade secrets. Absent an injunction, 360imaging "[stands] to lose customer relationships and would suffer irreparable harm." *Kennedy v. Shave Barber Company, LLC*, 348 Ga. App. 298, 308 (2018).  And courts have held that "the prospective loss of customers . . . is not an injury that damages can adequately repair." *Green*, 2020 U.S. Dist. LEXIS 256051, at *25.

-17-

Here, as a direct and proximate result of Defendants' unlawful solicitation of 360imaging's customers, Plaintiff has suffered and continues to suffer irreparable damages and other harm which cannot adequately be remedied through monetary relief alone. (Compl. ¶ 44) Without immediate injunctive relief, 360imaging "stands to lose significant revenue and the value of its trade secrets will erode materially." *Amedisys Holding, LLC v. Interim Healthcare of Atlanta, Inc.*, 793 F. Supp. 2d 1302, 1314 (N.D. Ga. 2011).

On the other hand, Defendants will not suffer any legitimate harm from the imposition of an injunction because a party "cannot suffer compensable harm when enjoined from unlawful activity." *Id.* at 1314 (citation omitted). Plaintiff seeks only to prevent its Former Employee Defendants from doing what they have no right to do – use 360imaging's trade secret information and solicit customers with whom they have had material contact. Therefore, the balance of harms tilts in favor of 360imaging.

### D. An Injunction Would Serve the Public Interest

Granting the requested temporary restraining order and injunction would further Georgia's public policy of and commitment to ensuring fair competition and protecting Georgia's companies from unlawful interference with their business operations. The GTSA provides that "[a]ctual or threatened misappropriation may be enjoined." O.C.G.A. § 10-1-762(a). And the RCA similarly provides: "[a] court

SGR/26542568.1

shall enforce a restrictive covenant by any appropriate and effective remedy available at law or equity, including, but not limited to, temporary and permanent injunctions." O.C.G.A. § 13-8-58(c). Furthermore, "Georgia's public policy now supports the enforcement of restrictive covenants." *PointeNorth Ins. Group v. Zander*, 2011 WL 4601028, at *4 (N.D. Ga. Sept. 30, 2011). So, here, the imposition of an injunction would promote the protection of Georgia companies from unlawful misappropriation and protect Plaintiff's trade secrets.

## IV.   CONCLUSION

Based on the foregoing reasons, 360imaging thus respectfully requests that the Court:

(a)  Immediately hear this request for interlocutory injunction and temporary injunctive relief;

(b)  Enjoin Defendants ElSayed, Samir and Azmy, and any associated person or entity acting on their behalf, from using, disclosing, misappropriating, transferring, accessing, altering, deleting, or destroying any of Plaintiff's information that Defendants removed, copied, backed up, or otherwise obtained from 360imaging.

(c)  Enjoin Defendants from directly or indirectly soliciting any customers or prospective customers of Plaintiff's identified in the 360imaging customer list;

SGR/26542568.1

(d) Enjoin Defendants ElSayed, Samir and Azmy, as well as any other former employee Defendant, from directly or indirectly soliciting any customers or prospective customers of Plaintiff's with whom Defendants had material contact during their employment with 360imaging;

(e) Enjoin Defendants from destroying any relevant evidence and metadata;

(f) Order Defendants Azmy, Samir, H. Tarek and Amin to return any property or information belonging to 360imaging that is in their possession to 360imaging; and

(g) Award 360imaging any further relief it deems just and proper.

Respectfully submitted this 13th day of December, 2021.

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Matthew W. Clarke*
Matthew W. Clarke
Georgia Bar No. 127430
William Long
Georgia Bar No. 457490
1105 W Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309-3592
Telephone: (404) 815-3767
Facsimile: (404) 685-7067
Email: mclarke@sgrlaw.com

*Attorneys for Plaintiff*

-20-

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| 360 IMAGING, LLC , | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | 2021CV356723 |
| vs. | : | |
| | : | |
| ITXPROS DENTAL, INC., ITXPROS LLC, | : | |
| KARIM MOHAMED ELSAYED, AHMED | : | |
| KHATER, HUSSEIN TAREK, SARA | : | |
| AMIN, SHENOUDA SAMIR, BASEM | : | |
| TAREK, AYA ABDEL KADER | : | |
| MOUSTAFA, and MARAM ALAA ELDIN | : | |
| AZMY, | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 13th, 2021, I electronically filed the foregoing **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION AND BRIEF IN SUPPORT, AND THE AFFIDAVIT OF YAHIA MEGAHED IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION** with the Clerk of Court using the Odyssey eFileGA system, and served Defendants' counsel by placing a copy of same in FedEx, postage prepaid and addressed as follows:

1

Adam S. Katz, Esq.
Katz Litigation Group
200 Galleria Parkway SE, Suite 1805
Atlanta, Georgia 30339

I also certify I have this day served the foregoing **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION AND BRIEF IN SUPPORT, AND THE AFFIDAVIT OF YAHIA MEGAHED IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION** by depositing copies of it for FedEx shipping with adequate postage affixed thereto for delivery to the following addresses of the Defendants:

ITXPros Dental, Inc.
16192 Coastal Highway
Lewes, Delaware 19958

ITXPros LLC
16192 Coastal Highway
Lewes, Delaware 19958

Karim Mohamed ElSayed
26 Kolyet El Banat Project – Behind Dar El Defaa
First Nasr City,
Cairo, Egypt

Ahmed Khater
6M Square 1224 Masaken Sheraton
El Nozha,
Cairo, Egypt

2

Hussein Tarek
Fifth Settlement District 5
M1 First New Cairo
Cairo, Egypt

Sara Amin
10 Yahia Shahin Street
El Omranya
Giza, Egypt

Shenouda Samir
Said Street Berket El Sabaa District
Berket El Sabaa West
Menoufia, Egypt

Basem Tarek
13 El Falaky Street Mahatet El Ramel
El Atareen
Alexandria, Egypt

Aya Abdel Kader Moustafa

7 El Wakad Street by Tomanbai Street
Zeitoun
Cairo, Egypt

Maram Alaa Eldin Azmy
4 Ibn Batouta Street
Haram
Giza, Egypt

This 13th day of December, 2021.

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Matthew W. Clarke*
Matthew W. Clarke
Georgia Bar No. 127430
William Long
Georgia Bar No. 457490
1105 W Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309-3592
Telephone: (404) 815-3767
Facsimile: (404) 685-7067
Email: mclarke@sgrlaw.com

*Attorneys for Plaintiff*

4

# EXHIBIT D

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

| | | |
|---|---|---|
| 360 IMAGING, LLC , | ⋮ | |
| Plaintiff, | ⋮ | Civil Action File No. |
| vs. | ⋮ | 2021CV356723 |
| ITXPROS DENTAL, INC., ITXPROS LLC, KARIM MOHAMED ELSAYED, AHMED KHATER, HUSSEIN TAREK, SARA AMIN, SHENOUDA SAMIR, BASEM TAREK, AYA ABDEL KADER MOUSTAFA, AND MARAM ALAA ELDIN AZMY, | ⋮ | |
| Defendants. | ⋮ | |

## AFFIDAVIT OF YAHIA MEGAHED IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INTERLOCUTORY INJUNCTION

I, Yahia Megahed, having been duly sworn, state as follows:

1. I am over 21 years of age, suffer from no legal disabilities, and am competent to give this Affidavit.

2. I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

3. I give these statements from personal knowledge.

4. I submit this Affidavit in support of Plaintiff's Motion for Temporary Restraining Order and Interlocutory Injunction.

5. I currently reside in Florida.

6.  I am fluent in English.

7.  I earned a Master's degree in Engineering from the University of Central Florida.

8.  I have an extensive background in the creation, design and marketing of software, laboratories and products to aid dental surgeons and other professionals and patients in the field of dental implants.

9.  I have held executive, leadership positions at 360 Imaging and AT&T.

10. From January 2012 to the present, I have been employed full-time by 360 Imaging, LLC, (hereinafter "360Imaging") a Georgia company and national provider of products and services to dental health providers.

11. As CEO of 360 Imaging, I am responsible for directing company operations and strategy to serve U.S. dental professionals with cutting edge surgical solutions.

12. Defendants Karim Mohamed ElSayed, Shenouda Samir and Maram Alaa Eldin Azmy signed an Employment Agreement with us. The content of these agreements were identical. True and correct copies of Samir's and Azmy's Employment Agreements are attached to this Affidavit as Exhibits A and B.

13. On August 3rd, 2020, Paul Warley incorporated a Georgia corporation named "ITXPros, LLC." Records indicate that the business is "Active."

14. Around April 2021 through August 2021, SYNrG Lab, a client of 360Imaging, stopped doing business with our company. This was also the time when the Defendant former employees left 360Imaging.

15. We located on our company's computer system a draft of a shareholder agreement in Karim ElSayed's 360Imaging work account. The agreement mentioned that "the primary object of the Company shall be to own and control operations in the Middle East and USA region which develop, market and sell dentistry solutions. . . ."

16. In or around June 1st and June 8th, 2021, two other business entities named "ITXPros Dental Inc." and "ITXPros LLC" were incorporated in the state of Delaware. These two companies have the same registered address in Delaware.

17. On its web page, (https://www.itxpros.com) ITXPros advertises as a business for dental professionals that provides dental treatment planning, surgical guide design and digital planning design. Such a business is directly competitive with 360Imaging.

18. On June 21, 2021 at 10:33 AM, Dr. Zhu, a 360Imaging customer, sent us a screen image of a text message from Karim Mohamed ElSayed, trying to solicit Dr. Zhu to work with ITXPros. The text claims that ITXPros has "better turnaround time" and has "less expensive prices than what you pay

now." A true and correct image of the text message is attached to this Affidavit as Exhibit C. While he was employed with 360Imaging, Mr. ElSayed had material contact with Dr. Zhu.

19. On September 11, 2021, SYNrG Lab posted a photograph on its Instagram account, depicting an anatomic guide that was developed by 360Imaging with a report from 360Imaging software, but the logo for ITXPros was on both the guide and the software. This demonstrates that ITXPros was utilizing 360Imaging's proprietary surgical guide and computer software and simply inserting ITXPros' name on our product and passing it off as their own. True and correct copies of the Instagram post and a copy of a 360Imaging report from its own software are attached to this Affidavit as Exhibits D and E.

20. In a comment to its September 15, 2021 Instagram post, SYNrG Lab specifically thanks "AK" (believed to be Defendant Ahmed Khater) and ITXPros for its implant planning support. An Instagram account named "aekhater" that upon information and belief belongs to Ahmed Khater replied to the post and notes that ITXPros plans to have "many more beautiful cases" with 360Imaging's former customer. A true and correct copy of the post and comments are attached to this Affidavit as Exhibit F.

21. In an Instagram post from October 2, 2021, SYNrG Lab posts an image of an ITXPros product named the "Maxilla AnatomX Guide." The anatomic guide presented appears to be identical to 360Imaging's Anatomic Guide. A true and correct copy of the post is attached to this Affidavit as Exhibit G.

22. The anatomic guide is the subject of U.S. patent application 15/913,425 which issued as a patent on November 2nd, 2021 under the number 11,160,639. 360Imaging has made modifications and advances in the anatomic guide. These modifications were not patented but are public only in that you can see them on the guide. Additionally, 360Imaging uses the red box, and we are the only company that uses the red box in the dental industry.

23. In an email from January 14, 2021, Defendant Aya Moustafa sent herself 360Imaging's master design files for our anatomic guide. A true and correct copy of the email is attached to this Affidavit as Exhibit H.

24. Additionally, our systems have tracked that on July 29, 2021, Defendant Hussein Tarek used an unlicensed copy of our software to export output from our software. Once we noticed Mr. Tarek's unauthorized use, we blocked it.

25. Defendant former employees used 360Imaging software to produce work for Thompson Suburban Dental Lab, Pittman Dental Laboratory, Infinia, Dr.

Bogart (a dental health professional) and SYNrG Lab. In fact, our access to the ITXPros website shows that many of its customers are former clients of 360Imaging with whom the Defendants had material contact while our employees.

26. Our systems have tracked the unlicensed use of our software for the treatment of over ten cases. For example, a case for Dr. Bogart was first submitted to 360Imaging, got cancelled, and then was designed on a computer unofficially acquired by ITXPros. A true and correct copy of the Computer ID tracking and Dr. Bogart's patient case file are attached to this Affidavit as Exhibits I and J.

FURTHER AFFIANT SAYETH NOT

By _____ /ahia Megahed _____

**Yahia Megahed**

**SWORN TO and SUBSCRIBED BEFORE ME, this** 9th **day of December, 2021.**

Notary Public
My commission expires: 12/10/22

# EXHIBIT A



# EMPLOYMENT AGREEMENT

This **EMPLOYMENT AGREEMENT** (the "*Agreement*"), is made and effective this **1st day of January 2021** (the "*Effective Date*"), by and between 360 Imaging, LLC, a Delaware limited liability company ("*Employer*"), and **Shenoda Samir Nadhi Sorial** ("*Employee*").

**WHEREAS,** Employer is an Atlanta, Georgia-based company that provides a wide range of products and services to dental practice clients, including without limitation treatment planning software for planning of implant cases, surgical guides, and digital lab services;

**WHEREAS,** Employee has served for Employer since approximately **September 18, 2018** on an at-will basis;

**WHEREAS,** Employer wishes to secure Employee's employment for a set time period going forward, while also providing for the protection of Employer's customer relationships, goodwill, trade secrets, confidential information, and investment in any specialized training provided to Employee; and

**WHEREAS,** Employee desires to accept employment with Employer for a set time period upon the terms set forth herein and to provide assurances for the protection of Employer's customer relationships, goodwill, trade secrets, confidential information, and investment in any specialized training provided to Employee; and

**WHEREAS,** Employee acknowledges that he is required to sign this Agreement as a condition for receiving a guaranteed term of employment with Employer pursuant to the terms set forth herein;

**NOW, THEREFORE,** in consideration of the continued employment of Employee by Employer, the compensation paid by Employer to Employee, the disclosure by Employer to Employee of Confidential Information, the mutual covenants and promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and accepted, the parties hereto agree as follows:

1.   **Employment Term.**  The period of the contract is one year starting from the commencement date and automatic renewal allows the contract to continue for a similar period unless one of the parties shall notify in writing his desire to terminate this contract. Employee shall be employed by Employer in the position of Segmentation Specialist unless earlier terminated in accordance with the provisions hereof.

2.   **Employment Duties.**

Employee shall perform the duties and responsibilities listed on his communicated Job description and such other duties as may be reasonably directed from time to time by Employer's CEO or his or her designee. During the term of employment, Employee shall devote his or her full business time, attention, and energies to the business of Employer and shall use his or her best efforts in carrying out the duties of his or her employment.

1





During Employee's employment with Employer. Employee agrees to avoid any personal or business activities that are reasonably likely to (i) interfere with Employee's duties of employment, (ii) divide Employee's loyalty to Employer, or (iii) create or appear to create a conflict of interest for Employee.  Without limiting the foregoing, Employee agrees that failure to comply with the provisions of this Agreement and/or the following covenants will constitute a violation of Employee's duty of loyalty. Employee shall advance the legitimate interests of Employer when the opportunity to do so arises. During the term of his or her employment, Employee shall not (a) take any opportunities for himself personally that are discovered through the use of information of Employer or his or her position with Employer or (b) use property or information of the Employer or his or her position with Employer for personal gain unrelated to his or her duties to Employer. Employee shall avoid any relationship or activity that may directly or indirectly impair his or her independence or judgment in connection with Employee's employment with Employer.

    3.    <u>Definitions</u>.  The capitalized terms in this Agreement are defined as follows, unless they are specifically defined elsewhere in the Agreement:

"*Business*" means the sale, marketing or provision of one or more of the following products or services to dental health providers: (a) treatment planning software for planning of implant cases: (b) surgical guides; and/or (c) digital lab services;

"*Cause*" means and includes a reasonable good faith determination by the Board of Directors of Employer of one or more of the following acts or omissions by Employee: (i) an intentional act of fraud, embezzlement, theft or any other material violation of law in connection with the subject matter of this Agreement; (ii) a conviction of a felony or of a misdemeanor involving moral turpitude; (iii) intentional damage to Employer's assets; (iv) intentional disclosure of Confidential Information in violation of this Agreement; (v) a material breach of any material obligation(s) under this Agreement; (vi) the willful and continued failure to substantially perform employment duties; (vii) the causation of significant financial injury to Employer; and (viii) a willful or grossly negligent act that is likely to materially harm the reputation or goodwill of Employer;

"*Client*" shall mean and include a Person (i) to or for whom Employer provides products or services in connection with the Business; (ii) with whom Employer contracts for the provision of products or services in connection with Business; or (iii) who Employer is actively soliciting for the purpose of providing products or services in connection with the Business;

"*Competing Activity*" means and includes any business or professional activity that is the same or similar to those actually conducted by Employee on behalf of Employer at any time within the two years immediately prior to Termination, including without limitation those job duties listed on Exhibit "A" hereto;

"*Competing Business*" means any Person, other than Employer, engaged in the Business

"*Confidential Information*" means information and the compilation of information, in tangible or intangible form, that pertains to Employer's business, has value to Employer, and is not available to or readily ascertainable by persons or entities other than Employer or its

2

55



employees and agents. Assuming the foregoing criteria are met, Confidential Information includes, but is not limited to, the following:  Trade Secrets; names of Clients or Former Clients; compilations of information concerning Clients or Former Clients; lists of past  and present Clients or Former Clients; information contained in past and present accounts of Clients or Former Clients; the volume of business and the nature of the business relationship between Employer and its Clients or Former Clients; Employer's business plans and strategies; the description of future services that are or may be provided by Employer; Employer's financial, marketing and sales information; technical expertise, formulas, processes and know-how, including but not limited to the unique manner in which Employer conducts business; the terms of any agreements or arrangements with past or present Clients or Former Clients, including the amounts paid for such services or how such prices were determined; forms of agreements; financial statements of Employer and the information contained therein; Employer's tax filings and the information contained therein; financial data of any kind relating to Employer; personnel records and the information contained therein, such as compensation information and employee review information; confidential materials pertaining to legal matters; cost, pricing and billing information; the methods and systems used by Employer the Business; profiles of Clients or Former Clients; financial policies and procedures, revenues and profit margins; passwords, log-in IDs, or any other information relating to Employer's computer or electronic data systems; and training procedures and materials. Confidential Information does not have to be marked as "Confidential" or "Proprietary" to qualify for protection under this Agreement. Confidential Information shall also include information which has been disclosed to Employer by any third party, as to which Employer has an obligation to the third party to treat as confidential. "Confidential Information" shall not include any information that (a) was or becomes generally available to the public prior to, and other than as a result of, a disclosure by Employee, or (b) was available, or becomes available, to Employee on a non-confidential basis from a source other than Employer, but only if the source of such information is not bound by a confidentiality agreement with Employer or is not otherwise prohibited from transmitting the information to Employee by a contractual, legal, fiduciary or other obligation;

"*Former Clients*" shall mean and include a Person who is not a Client but (i) to or for whom Employer has at any time provided products or services in connection with the Business; (ii) with whom Employer has contracted at any time for the provision of products or services in connection with Business; or (iii) who Employer has at any time actively solicited for the purpose of providing products or services in connection with the Business;

"*Intellectual Property*" shall mean any creations, concepts, techniques, inventions, processes or works of authorship including any work whether protectable or not by  patent, trademark, copyright or as a Trade Secret, created in the course of employment whether  during work hours or not or, at the place of employment or elsewhere, relating in any way to the  subject matter of the Employer.

"*Person*" as used in this Agreement means an individual or a corporation, limited  liability company, partnership, joint venture, association, non-profit organization, joint-stock company, trust, unincorporated organization or other legally recognized entity of any kind;

SS.



"*Restricted Client*" shall mean any Client (a) with whom Employee had business dealings with on behalf of Employer during his or her employment with Employer; (b) whose dealings with Employer were coordinated or supervised by Employee during his or her employment with Employer; or (c) about whom Employee obtained confidential information in the ordinary course of business as a result of Employee's association with Employer;

"*Restricted Period*" shall mean twelve (12) months from the date of Termination;

"*Termination*" means the termination of Employee's employment with Employer for any reason whatsoever, whether for Cause, without Cause, or for any other reason, upon the initiative of either party;

"*Territory*" means and includes the following: (a) the geographic area located within a 50-mile radius of any location at which Employer provided services at any time within the one-year period immediately prior to Termination; (b) the geographic area located within a 50-mile radius of an office of a Restricted Customer; and (c) the geographic area within a 50-mile radius of any location at or to which Employee provided products or services as an employee of Employer within the one-year period immediately prior to Termination;

"*Trade Secret*" shall mean information belonging to Employer, including, but not limited to, technical or non-technical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or lists of actual or potential clients or suppliers, which:

    (a) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

    (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

    4.    **Compensation and Benefits** For the entirety of the Initial Term, Employer shall compensate Employee for his or her services rendered at the monthly base salary rate of EGP **8,800** , payable in arrears at least once per month, less any withholding required by law, and in accordance with Employer's standard compensation policies and procedures. Employer shall provide Employee the standard benefits offered to any and all other like employees of Employer as determined from time-to-time by the Board of Directors.

    **Termination**. Employer may terminate Employee's employment for Cause at any time and with no prior notice. In the event of a termination by Employer for Cause, Employer shall be required only to pay Employee his or her base salary earned through the date of such termination, but Employee shall not be entitled to any further compensation or benefits.

    Employer may terminate Employee's employment without Cause prior to the expiration of the Initial Term upon 30 days' notice.

    **Purpose of Restrictive Covenants**. Employee acknowledges and agrees that Employer is engaged in the Business. Employee acknowledges and agrees that by virtue of Employee's employment with the Employer, Employee will be provided and have access to confidential,

S. S.



proprietary, and highly sensitive information relating to the business of Employer and that is a valuable, competitive and unique asset of Employer, the confidentiality of which is essential to Employer to differentiate its products and services. Employee acknowledges and agrees that the categories of information listed in the definition of Confidential Information constitute valuable, special and unique property of Employer are not available to or readily ascertainable by the public. Employee further acknowledges and agrees that Employee's position will necessitate a high level of interaction between Employee and Employer's clients and employees, and Employee may be one of the primary contacts with a client on behalf of Employer; accordingly, there is a high risk and opportunity for Employee to misappropriate the relationship and goodwill existing between Employer and its clients. Thus, the purposes of this Agreement include without limitation the following: (a) the protection from use or disclosure to third-parties of non-public information relating to Employer's business; (b) the protection of unfair appropriation of Employer's goodwill and information acquired by or which will be acquired by Employee during his or her employment; (c) the protection of Employer's business relationships that have been or will be developed or nurtured or managed by the Employee during his or her employ by the Employer; and (d) the protection of Employer's investment in any specialized training provided to Employee.

5.     **Agreement Not to Disclose Confidential Information.** All Confidential Information received, obtained or produced by Employee while employed by Employer is confidential to and shall remain the sole and exclusive property of Employer. During the term of Employee's employment by Employer and for so long after Termination as the Confidential Information continues to qualify as such, Employee shall hold all Confidential Information in trust and strictest confidence, and shall not use, reproduce, distribute, disclose or otherwise disseminate Confidential Information outside of the scope of Employee's duties for Employer without the prior express, written consent of Employer. Employee may in no event take any action causing or fail to take action necessary in order to prevent any Confidential Information to lose its confidential character or cease to qualify as Confidential Information. Nothing herein shall be interpreted as a limitation or restriction on the provisions of state or federal trade secrets statutes or any legal rights or remedies granted thereunder.

6.     **Return of Employer's Property.** Employee acknowledges and agrees that all memoranda, notes, correspondence, databases, computer discs, computer files, computer entries, computer equipment and/or accessories, tablets, smartphones, storage devices, telephones, passwords or pass codes, user IDs, records, reports, manuals, books, papers, letters, keys, Internet database access codes, client profile data, job orders, client lists, contracts, software programs, information and records, drafts of instructions, guides and manuals, and other equipment, property, documentation (whether in draft or final form), Trade Secrets, Confidential Information, and other sales, financial or technological information relating to the Employer's business, and any and all other documents or things furnished to Employee by any representative of the Employer or otherwise acquired, created or developed by him in connection with his or her association with the Employer (collectively, "*Employer's Property*") shall at all times be the property of the Employer. Within twenty-four (24) hours of Termination, Employee will return to Employer any of Employer's Property in Employee's possession, custody or control.

S.S.



7. **Agreement Not to Compete**. During the term of Employee's employment and for the Restricted Period, Employee shall not engage in a Competing Activity in the Territory for a Competing Business.

8. **Agreement Not to Solicit Clients**. During the term of Employee's employment and for the Restricted Period, Employee shall not, directly or by assisting others, solicit, attempt to solicit, call upon, divert, or initiate contact or communication with any Restricted Client on behalf of a Competing Business for the purpose of selling or providing, or attempting to sell or provide, any service or product that is the same as or competitive or potentially competitive with any product or service sold or provided by Employer.

9. **Agreement Not to Solicit Employees**. During the term of Employee's employment by Employer, Employee shall not, either directly or indirectly, solicit, encourage or divert or attempt to solicit, encourage or divert any person employed by Employer for the purpose of having such person perform duties of any nature for another Person. During the Restricted Period, Employee shall not, either directly or indirectly, on Employee's own behalf, or on behalf of any other person or entity, solicit, divert, encourage, or attempt to solicit, divert or encourage, or in any manner cause any person employed by Employer to discontinue employment with Employer, except that the restriction of this sentence shall apply only to those employees managed by Employee, either directly or indirectly, or with whom Employee had contact in the course of Employee's employment by Employer.

10. **Disclosure of Agreement**. Employee agrees, represents and covenants that prior to accepting any offer for employment after Termination, Employee will disclose this Agreement to any prospective employer to ensure that such prospective employer is aware of such provisions and the obligations imposed thereby. .

11. **Ownership of Intellectual Property in Employee's Creations and Developments**. Employee acknowledges that he may have created and may in the future create Intellectual Property for Employer in connection with his or her employment. Employee agrees that all worldwide rights in any such Intellectual Property created by Employee belong to or shall belong to Employer as a work for hire, if applicable, otherwise by assignment, and Employee agrees to execute such other documents as may be needed to evidence the assignment of those rights. To the extent such Intellectual Property may not be considered work made for hire by Employee for Employer, Employee agrees to assign, and does hereby automatically assign at the time of creation of such Intellectual Property, without any requirement of further consideration, all right, title or interest Employee may have in such Intellectual Property, including the right to make derivate works, to Employer. Employee hereby waives so called "moral rights" in such Intellectual Property in those jurisdictions which have such rights, and if such rights cannot be waived, hereby agrees to transfer them to Employer.

12. **Notification of Rights Under Federal Defend Trade Secrets Act of 2016**. Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret made in confidence to any federal, state, or local government official, either directly or indirectly, or to an attorney, provided such disclosure was (1) made solely for the purpose of reporting or investigating a suspected violation of law; or (2) made in a

6

S.S.



complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Furthermore, if Employee files a lawsuit against the Company for retaliation for reporting a suspected violation of law, Employee may disclose the trade secret to his or her attorney and may use the trade secret in the court proceeding if Employee files any document containing the trade secret under seal and does not disclose the trade secret except pursuant to court order.

13.   **Remedies**. The parties acknowledge that a breach or threatened breach of any of the terms of the post-employment restrictive covenants of this Agreement by Employee would result in material and irreparable damage and injury to Employer and that it would be difficult or impossible to establish the full monetary value of such damage. Therefore, Employee specifically acknowledges, consents and agrees that Employer will be entitled to injunctive relief by a court of appropriate jurisdiction in the event of Employee's breach or threatened breach of any of the terms hereof. Employer's right to an injunction will not prohibit Employer from pursuing other remedies, including the recovery of monetary damages. It shall not be a defense to any action hereunder that Employee has a claim against Employer under this Agreement or otherwise.

14.   **Severability**. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible. Accordingly, if any particular paragraph(s), subparagraph(s) or portion(s) of this Agreement shall be adjudicated to be invalid or unenforceable as written, such paragraph(s), subparagraph(s) or portion(s) shall be modified to the extent necessary to be valid or enforceable. Such modification shall not affect the remaining provisions of this Agreement. To the extent any paragraph(s), subparagraph(s) or portion(s) of this Agreement found invalid or unenforceable cannot be modified to be made valid or enforceable, then the Agreement shall be construed as if that paragraph(s), subparagraph(s) or portion(s) were deleted, and all remaining terms and provisions shall be enforceable in law or equity in accordance with their terms.

15.   **Waiver**. The waiver by Employer of any breach of this Agreement by Employee shall not be effective unless in writing and signed by Employer, and no such waiver shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion.

16.   **Governing Law and Jurisdiction**. This Agreement shall be governed by the laws of the State of Georgia. The parties agree the appropriate State or Federal courts in Fulton County, Georgia shall have jurisdiction and venue for all disputes between the parties under this Agreement. Employee hereby irrevocably consents to the jurisdiction and venue of the State and Federal courts within Fulton County, Georgia, for adjudication of disputes between the parties under this Agreement. Employee hereby waives any objections or defenses to jurisdiction or venue in any such proceeding before such court. The parties hereby agree that the governing law and venue set forth in this Section is expressly, knowingly and voluntarily agreed to by the parties.

17.   **Entire Agreement; Modification**. This Agreement constitutes the entire agreement regarding its subject matter and may not be modified or amended in any way except in writing and with the mutual consent of Employee and Employer. This Agreement supersedes

S.S.



and replaces any prior agreement or agreements of employment, confidentiality, nondisclosure, noncompetition or no solicitation between Employer and Employee.

18. **Multiple Counterparts and Electronic Execution.** This Agreement may be executed in multiple original or electronic counterparts, each of which shall be enforceable against the party signing it, and signature pages transmitted by facsimile, email, Adobe EchoSign or other electronic means shall have the same force and effect as delivery of an original signature.

19. **Survival and Enforcement**. Any and all covenants set forth herein relating to any post-termination obligations of Employee shall survive and be enforceable in law and/or equity after Termination. Employee agrees and represents that enforcement of this Agreement will not present or result in any undue economic hardship on Employee, and Employee has willingly and knowingly considered the risk of any hardship that might result from enforcement of this Agreement in deciding to execute the Agreement and continue employment with Employer.

20. **Binding Effect**. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by any successors (including any successor as a result of a corporate merger, acquisition or similar reorganization) and assigns of Employer.

THE UNDERSIGNED EMPLOYEE ACKNOWLEDGES THAT HE HAS READ AND UNDERSTANDS THIS TERMS OF THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ITS CONFIDENTIAL INFORMATION, COVENANT NOT TO COMPETE, NONSOLICITATION, NONRECRUITMENT AND DUTY OF LOYALTY PROVISIONS, AND THAT HE SIGNS THIS AGREEMENT INTENDING TO BE BOUND BY ITS TERMS AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE. EMPLOYEE FURTHER ACKNOWLEDGES THAT HE HAS HAD AN OPPORTUNITY, IF HE SO CHOSE, TO CONSULT WITH AN ATTORNEY CONCERNING THE TERMS OF THIS AGREEMENT PRIOR TO HIS OR HER EXECUTION OF SAME.

"EMPLOYEE"

*Shenoda samir*

Shenoda Samir Nadhi Sorial
Date:_____

"EMPLOYER"
360 IMAGING, LLC

By: *Yahia Megahed*
Name: Yahia Megahed
Title: CEO

# EXHIBIT B



## EMPLOYMENT AGREEMENT

This **EMPLOYMENT AGREEMENT** (the "*Agreement*"), is made and effective this **1st day of January 2021** (the "*Effective Date*"), by and between 360 Imaging, LLC, a Delaware limited liability company ("*Employer*"), and **Maram Alaa Eldein Azmy Mohamed Selim** ("*Employee*").

**WHEREAS**, Employer is an Atlanta, Georgia-based company that provides a wide range of products and services to dental practice clients, including without limitation treatment planning software for planning of implant cases, surgical guides, and digital lab services;

**WHEREAS**, Employee has served for Employer since approximately **February 12, 2019** on an at-will basis;

**WHEREAS**, Employer wishes to secure Employee's employment for a set time period going forward, while also providing for the protection of Employer's customer relationships, goodwill, trade secrets, confidential information, and investment in any specialized training provided to Employee; and

**WHEREAS**, Employee desires to accept employment with Employer for a set time period upon the terms set forth herein and to provide assurances for the protection of Employer's customer relationships, goodwill, trade secrets, confidential information, and investment in any specialized training provided to Employee; and

**WHEREAS**, Employee acknowledges that he is required to sign this Agreement as a condition for receiving a guaranteed term of employment with Employer pursuant to the terms set forth herein;

**NOW, THEREFORE,** in consideration of the continued employment of Employee by Employer, the compensation paid by Employer to Employee, the disclosure by Employer to Employee of Confidential Information, the mutual covenants and promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and accepted, the parties hereto agree as follows:

1.  **Employment Term.** The period of the contract is one year starting from the commencement date and automatic renewal allows the contract to continue for a similar period unless one of the parties shall notify in writing his desire to terminate this contract.
Employee shall be employed by Employer in the position of Senior Treatment Planner Specialist unless earlier terminated in accordance with the provisions hereof.

2.  **Employment Duties.**

Employee shall perform the duties and responsibilities listed on his communicated Job description and such other duties as may be reasonably directed from time to time by Employer's CEO or his or her designee. During the term of employment, Employee shall devote his or her full

1

business time, attention, and energies to the business of Employer and shall use his or her best efforts in carrying out the duties of his or her employment.

During Employee's employment with Employer, Employee agrees to avoid any personal or business activities that are reasonably likely to (i) interfere with Employee's duties of employment, (ii) divide Employee's loyalty to Employer, or (iii) create or appear to create a conflict of interest for Employee. Without limiting the foregoing, Employee agrees that failure to comply with the provisions of this Agreement and/or the following covenants will constitute a violation of Employee's duty of loyalty. Employee shall advance the legitimate interests of Employer when the opportunity to do so arises. During the term of his or her employment, Employee shall not (a) take any opportunities for himself personally that are discovered through the use of information of Employer or his or her position with Employer or (b) use property or information of the Employer or his or her position with Employer for personal gain unrelated to his or her duties to Employer. Employee shall avoid any relationship or activity that may directly or indirectly impair his or her independence or judgment in connection with Employee's employment with Employer.

     3.    **Definitions.** The capitalized terms in this Agreement are defined as follows, unless they are specifically defined elsewhere in the Agreement:

"*Business*" means the sale, marketing or provision of one or more of the following products or services to dental health providers: (a) treatment planning software for planning of implant cases; (b) surgical guides; and/or (c) digital lab services;

"*Cause*" means and includes a reasonable good faith determination by the Board of Directors of Employer of one or more of the following acts or omissions by Employee: (i) an intentional act of fraud, embezzlement, theft or any other material violation of law in connection with the subject matter of this Agreement; (ii) a conviction of a felony or of a misdemeanor involving moral turpitude; (iii) intentional damage to Employer's assets; (iv) intentional disclosure of Confidential Information in violation of this Agreement; (v) a material breach of any material obligation(s) under this Agreement; (vi) the willful and continued failure to substantially perform employment duties; (vii) the causation of significant financial injury to Employer; and (viii) a willful or grossly negligent act that is likely to materially harm the reputation or goodwill of Employer;

"*Client*" shall mean and include a Person (i) to or for whom Employer provides products or services in connection with the Business; (ii) with whom Employer contracts for the provision of products or services in connection with Business; or (iii) who Employer is actively soliciting for the purpose of providing products or services in connection with the Business;

"*Competing Activity*" means and includes any business or professional activity that is the same or similar to those actually conducted by Employee on behalf of Employer at any time within the two years immediately prior to Termination, including without limitation those job duties listed on Exhibit "A" hereto;

"*Competing Business*" means any Person, other than Employer, engaged in the Business

"*Confidential Information*" means information and the compilation of information, in tangible or intangible form, that pertains to Employer's business, has value to Employer, and is not available to or readily ascertainable by persons or entities other than Employer or its employees and agents. Assuming the foregoing criteria are met, Confidential Information includes, but is not limited to, the following: Trade Secrets; names of Clients or Former Clients; compilations of information concerning Clients or Former Clients; lists of past and present Clients or Former Clients; information contained in past and present accounts of Clients or Former Clients; the volume of business and the nature of the business relationship between Employer and its Clients or Former Clients; Employer's business plans and strategies; the description of future services that are or may be provided by Employer; Employer's financial, marketing and sales information; technical expertise, formulas, processes and know-how, including but not limited to the unique manner in which Employer conducts business; the terms of any agreements or arrangements with past or present Clients or Former Clients, including the amounts paid for such services or how such prices were determined; forms of agreements; financial statements of Employer and the information contained therein; Employer's tax filings and the information contained therein; financial data of any kind relating to Employer; personnel records and the information contained therein, such as compensation information and employee review information; confidential materials pertaining to legal matters; cost, pricing and billing information; the methods and systems used by Employer the Business; profiles of Clients or Former Clients; financial policies and procedures, revenues and profit margins; passwords, log-in IDs, or any other information relating to Employer's computer or electronic data systems; and training procedures and materials. Confidential Information does not have to be marked as "Confidential" or "Proprietary" to qualify for protection under this Agreement. Confidential Information shall also include information which has been disclosed to Employer by any third party, as to which Employer has an obligation to the third party to treat as confidential. "Confidential Information" shall not include any information that (a) was or becomes generally available to the public prior to, and other than as a result of, a disclosure by Employee, or (b) was available, or becomes available, to Employee on a non-confidential basis from a source other than Employer, but only if the source of such information is not bound by a confidentiality agreement with Employer or is not otherwise prohibited from transmitting the information to Employee by a contractual, legal, fiduciary or other obligation;

"*Former Clients*" shall mean and include a Person who is not a Client but (i) to or for whom Employer has at any time provided products or services in connection with the Business; (ii) with whom Employer has contracted at any time for the provision of products or services in connection with Business; or (iii) who Employer has at any time actively solicited for the purpose of providing products or services in connection with the Business;

"*Intellectual Property*" shall mean any creations, concepts, techniques, inventions, processes or works of authorship including any work whether protectable or not by patent, trademark, copyright or as a Trade Secret, created in the course of employment whether during work hours or not or, at the place of employment or elsewhere, relating in any way to the subject matter of the Employer.

"*Person*" as used in this Agreement means an individual or a corporation, limited liability company, partnership, joint venture, association, non-profit organization, joint-stock company, trust, unincorporated organization or other legally recognized entity of any kind;

"*Restricted Client*" shall mean any Client (a) with whom Employee had business dealings with on behalf of Employer during his or her employment with Employer; (b) whose dealings with Employer were coordinated or supervised by Employee during his or her employment with Employer; or (c) about whom Employee obtained confidential information in the ordinary course of business as a result of Employee's association with Employer;

"*Restricted Period*" shall mean twelve (12) months from the date of Termination;

"*Termination*" means the termination of Employee's employment with Employer for any reason whatsoever, whether for Cause, without Cause, or for any other reason, upon the initiative of either party;

"*Territory*" means and includes the following: (a) the geographic area located within a 50-mile radius of any location at which Employer provided services at any time within the one-year period immediately prior to Termination; (b) the geographic area located within a 50-mile radius of an office of a Restricted Customer; and (c) the geographic area within a 50- mile radius of any location at or to which Employee provided products or services as an employee of Employer within the one-year period immediately prior to Termination;

"*Trade Secret*" shall mean information belonging to Employer, including, but not limited to, technical or non-technical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or lists of actual or potential clients or suppliers, which:

    (a) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

    (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

4.    **C ompensation and Benefits** For the entirety of the Initial Term, Employer shall compensate Employee for his or her services rendered at the monthly base salary rate of EGP **17,000** , payable in arrears at least once per month, less any withholding required by law, and in accordance with Employer's standard compensation policies and procedures. Employer shall provide Employee the standard benefits offered to any and all other like employees of Employer as determined from time-to-time by the Board of Directors.

    **Termination**. Employer may terminate Employee's employment for Cause at any time and with no prior notice. In the event of a termination by Employer for Cause, Employer shall be required only to pay Employee his or her base salary earned through the date of such termination, but Employee shall not be entitled to any further compensation or benefits.

    Employer may terminate Employee's employment without Cause prior to the expiration of the Initial Term upon 30 days' notice.

**Purpose of Restrictive Covenants**. Employee acknowledges and agrees that Employer is engaged in the Business. Employee acknowledges and agrees that by virtue of Employee's employment with the Employer, Employee will be provided and have access to confidential, proprietary, and highly sensitive information relating to the business of Employer and that is a valuable, competitive and unique asset of Employer, the confidentiality of which is essential to Employer to differentiate its products and services. Employee acknowledges and agrees that the categories of information listed in the definition of Confidential Information constitute valuable, special and unique property of Employer are not available to or readily ascertainable by the public. Employee further acknowledges and agrees that Employee's position will necessitate a high level of interaction between Employee and Employer's clients and employees, and Employee may be one of the primary contacts with a client on behalf of Employer; accordingly, there is a high risk and opportunity for Employee to misappropriate the relationship and goodwill existing between Employer and its clients. Thus, the purposes of this Agreement include without limitation the following: (a) the protection from use or disclosure to third-parties of non-public information relating to Employer's business; (b) the protection of unfair appropriation of Employer's goodwill and information acquired by or which will be acquired by Employee during his or her employment; (c) the protection of Employer's business relationships that have been or will be developed or nurtured or managed by the Employee during his or her employ by the Employer; and (d) the protection of Employer's investment in any specialized training provided to Employee.

5.   **Agreement Not to Disclose Confidential Information**. All Confidential Information received, obtained or produced by Employee while employed by Employer is confidential to and shall remain the sole and exclusive property of Employer. During the term of Employee's employment by Employer and for so long after Termination as the Confidential Information continues to qualify as such, Employee shall hold all Confidential Information in trust and strictest confidence, and shall not use, reproduce, distribute, disclose or otherwise disseminate Confidential Information outside of the scope of Employee's duties for Employer without the prior express, written consent of Employer. Employee may in no event take any action causing or fail to take action necessary in order to prevent any Confidential Information to lose its confidential character or cease to qualify as Confidential Information. Nothing herein shall be interpreted as a limitation or restriction on the provisions of state or federal trade secrets statutes or any legal rights or remedies granted thereunder.

6.   **Return of Employer's Property**. Employee acknowledges and agrees that all memoranda, notes, correspondence, databases, computer discs, computer files, computer entries, computer equipment and/or accessories, tablets, smartphones, storage devices, telephones, passwords or pass codes, user IDs, records, reports, manuals, books, papers, letters, keys, Internet database access codes, client profile data, job orders, client lists, contracts, software programs, information and records, drafts of instructions, guides and manuals, and other equipment, property, documentation (whether in draft or final form), Trade Secrets, Confidential Information, and other sales, financial or technological information relating to the Employer's business, and any and all other documents or things furnished to Employee by any representative of the Employer or otherwise acquired, created or developed by him in connection with his or her association with the Employer (collectively, "*Employer's Property*") shall at all times be the

property of the Employer. Within twenty-four (24) hours of Termination, Employee will return to Employer any of Employer's Property in Employee's possession, custody or control.

7.    **Agreement Not to Compete**. During the term of Employee's employment and for the Restricted Period, Employee shall not engage in a Competing Activity in the Territory for a Competing Business.

8.    **Agreement Not to Solicit Clients**. During the term of Employee's employment and for the Restricted Period, Employee shall not, directly or by assisting others, solicit, attempt to solicit, call upon, divert, or initiate contact or communication with any Restricted Client on behalf of a Competing Business for the purpose of selling or providing, or attempting to sell or provide, any service or product that is the same as or competitive or potentially competitive with any product or service sold or provided by Employer.

9.    **Agreement Not to Solicit Employees**. During the term of Employee's employment by Employer, Employee shall not, either directly or indirectly, solicit, encourage or divert or attempt to solicit, encourage or divert any person employed by Employer for the purpose of having such person perform duties of any nature for another Person. During the Restricted Period, Employee shall not, either directly or indirectly, on Employee's own behalf, or on behalf of any other person or entity, solicit, divert, encourage, or attempt to solicit, divert or encourage, or in any manner cause any person employed by Employer to discontinue employment with Employer, except that the restriction of this sentence shall apply only to those employees managed by Employee, either directly or indirectly, or with whom Employee had contact in the course of Employee's employment by Employer.

10.    **Disclosure of Agreement**. Employee agrees, represents and covenants that prior to accepting any offer for employment after Termination, Employee will disclose this Agreement to any prospective employer to ensure that such prospective employer is aware of such provisions and the obligations imposed thereby.

11.    **Ownership of Intellectual Property in Employee's Creations and Developments**. Employee acknowledges that he may have created and may in the future create Intellectual Property for Employer in connection with his or her employment. Employee agrees that all worldwide rights in any such Intellectual Property created by Employee belong to or shall belong to Employer as a work for hire, if applicable, otherwise by assignment, and Employee agrees to execute such other documents as may be needed to evidence the assignment of those rights. To the extent such Intellectual Property may not be considered work made for hire by Employee for Employer, Employee agrees to assign, and does hereby automatically assign at the time of creation of such Intellectual Property, without any requirement of further consideration, all right, title or interest Employee may have in such Intellectual Property, including the right to make derivate works, to Employer. Employee hereby waives so called "moral rights" in such Intellectual Property in those jurisdictions which have such rights, and if such rights cannot be waived, hereby agrees to transfer them to Employer.

12.    **Notification of Rights Under Federal Defend Trade Secrets Act of 2016**. Employee shall not be held criminally or civilly liable under any federal or state trade secret law

for the disclosure of a trade secret made in confidence to any federal, state, or local government official, either directly or indirectly, or to an attorney, provided such disclosure was (1) made solely for the purpose of reporting or investigating a suspected violation of law; or (2) made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Furthermore, if Employee files a lawsuit against the Company for retaliation for reporting a suspected violation of law, Employee may disclose the trade secret to his or her attorney and may use the trade secret in the court proceeding if Employee files any document containing the trade secret under seal and does not disclose the trade secret except pursuant to court order.

13.   **R   emedies**. The parties acknowledge that a breach or threatened breach of any of the terms of the post-employment restrictive covenants of this Agreement by Employee would result in material and irreparable damage and injury to Employer and that it would be difficult or impossible to establish the full monetary value of such damage. Therefore, Employee specifically acknowledges, consents and agrees that Employer will be entitled to injunctive relief by a court of appropriate jurisdiction in the event of Employee's breach or threatened breach of any of the terms hereof. Employer's right to an injunction will not prohibit Employer from pursuing other remedies, including the recovery of monetary damages. It shall not be a defense to any action hereunder that Employee has a claim against Employer under this Agreement or otherwise.

14.   **S   everability**. It is the desire and intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible. Accordingly, if any particular paragraph(s), subparagraph(s) or portion(s) of this Agreement shall be adjudicated to be invalid or unenforceable as written, such paragraph(s), subparagraph(s) or portion(s) shall be modified to the extent necessary to be valid or enforceable. Such modification shall not affect the remaining provisions of this Agreement. To the extent any paragraph(s), subparagraph(s) or portion(s) of this Agreement found invalid or unenforceable cannot be modified to be made valid or enforceable, then the Agreement shall be construed as if that paragraph(s), subparagraph(s) or portion(s) were deleted, and all remaining terms and provisions shall be enforceable in law or equity in accordance with their terms.

15.   **W   aiver**. The waiver by Employer of any breach of this Agreement by Employee shall not be effective unless in writing and signed by Employer, and no such waiver shall operate or be construed as a waiver of the same type of breach or any other breach on a subsequent occasion.

16.   **G   overning Law and Jurisdiction**. This Agreement shall be governed by the laws of the State of Georgia. The parties agree the appropriate State or Federal courts in Fulton County, Georgia shall have jurisdiction and venue for all disputes between the parties under this Agreement. Employee hereby irrevocably consents to the jurisdiction and venue of the State and Federal courts within Fulton County, Georgia, for adjudication of disputes between the parties under this Agreement. Employee hereby waives any objections or defenses to jurisdiction or venue in any such proceeding before such court. The parties hereby agree that the governing law and venue set forth in this Section is expressly, knowingly and voluntarily agreed to by the parties.

17.   **E   ntire Agreement; Modification**. This Agreement constitutes the entire agreement regarding its subject matter and may not be modified or amended in any way except in writing and with the mutual consent of Employee and Employer. This Agreement supersedes and replaces any prior agreement or agreements of employment, confidentiality, nondisclosure, noncompetition or no solicitation between Employer and Employee.

18.   **M   ultiple Counterparts and Electronic Execution.** This Agreement may be executed in multiple original or electronic counterparts, each of which shall be enforceable against the party signing it, and signature pages transmitted by facsimile, email, Adobe EchoSign or other electronic means shall have the same force and effect as delivery of an original signature.

19.   **S   urvival and Enforcement**. Any and all covenants set forth herein relating to any post-termination obligations of Employee shall survive and be enforceable in law and/or equity after Termination. Employee agrees and represents that enforcement of this Agreement will not present or result in any undue economic hardship on Employee, and Employee has willingly and knowingly considered the risk of any hardship that might result from enforcement of this Agreement in deciding to execute the Agreement and continue employment with Employer.

20.   **B   inding Effect**. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by any successors (including any successor as a result of a corporate merger, acquisition or similar reorganization) and assigns of Employer.

**THE UNDERSIGNED EMPLOYEE ACKNOWLEDGES THAT HE HAS READ AND UNDERSTANDS THIS TERMS OF THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO, ITS CONFIDENTIAL INFORMATION, COVENANT NOT TO COMPETE, NONSOLICITATION, NONRECRUITMENT AND DUTY OF LOYALTY PROVISIONS, AND THAT HE SIGNS THIS AGREEMENT INTENDING TO BE BOUND BY ITS TERMS AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE. EMPLOYEE FURTHER ACKNOWLEDGES THAT HE HAS HAD AN OPPORTUNITY, IF HE SO CHOSE, TO CONSULT WITH AN ATTORNEY CONCERNING THE TERMS OF THIS AGREEMENT PRIOR TO HIS OR HER EXECUTION OF SAME.**

"EMPLOYEE"

*Maram Alaa Eldein*

**Maram Alaa Eldein Azmy Mohamed Selim**
Date: _7 March 2021_

"EMPLOYER"
360 IMAGING, LLC

By: _____
Name: Yahia Megahed
Title: CEO

# EXHIBIT C



# EXHIBIT D



Instagram

Search

synrglab • Follow

synrglab Just another SYNrG Surgery Monday with Team Currie / Patel Full Digital Dual arch breakfast! #synrglab #biohorizonsguidedsurgery #digitalimplant #digitalimplantdentistry #itxpros #allonx #dualarchmonday #anaxgum #3dsystems #nextdent5100 #teamworkmakesthedreamwork

8 likes

JULY 26

Add a comment...                    Post

SGR/26506559.1

# EXHIBIT E





R

L



## Patient Information

Patient name:

Date of birth: January 14, 1979

Gender:       Male

Doctor:



| Implant ( 3 ) | Implant ( 6 ) | Implant ( 8 ) | Implant ( 9 ) | Implant ( 11 ) |
|---|---|---|---|---|
| 4.6 mm X 12 mm BioHorizons Tapered Pro | 4.6 mm X 12 mm BioHorizons Tapered Pro | 4.2 mm X 12 mm BioHorizons Tapered Pro | 4.2 mm X 15 mm BioHorizons Tapered Pro | 4.6 mm X 12 mm BioHorizons Tapered Pro |
| Implant ( 13 ) | Implant ( 22 ) | Implant ( 24 ) | Implant ( 25 ) | Implant ( 26 ) |
| 4.6 mm X 12 mm BioHorizons Tapered Pro | 4.6 mm X 12 mm BioHorizons Tapered Plus | 4.2 mm X 12 mm BioHorizons Tapered Pro | 4.2 mm X 12 mm BioHorizons Tapered Pro | 4.2 mm X 12 mm BioHorizons Tapered Pro |
| Implant ( 28 ) | Fixation Pin ( 1 ) | Fixation Pin ( 2 ) | Fixation Pin ( 3 ) | Fixation Pin ( |
| 4.6 mm X 12 mm BioHorizons Tapered Plus | 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic |
| Fixation Pin ( 5 ) | Fixation Pin ( 6 ) | Fixation Pin ( 7 ) | Fixation Pin ( 8 ) | Fixation Pin ( |
| 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic | 1.9 mm X 13 mm Generic |

# EXHIBIT F







# EXHIBIT G



# EXHIBIT H



# EXHIBIT I

```
"4764255d8efd1b4db199a82be9b9b782" : {
  "courierSerial" : "fa252105832f473992f9f98e21cb54f2",
  "dpsVersion" : "16.1.1",
  "fingerprint" : {
    "CPU" : [ {
      "Family" : 107,
      "Manufacturer" : "AuthenticAMD",
      "Name" : "AMD Ryzen 5 3600 6-Core Processor          "
    } ],
    "GPU" : [ {
      "Description" : "NVIDIA GeForce GTX 1660",
      "Name" : "NVIDIA GeForce GTX 1660",
      "VideoProcessor" : "GeForce GTX 1660"
    } ],
    "InstallationID" : "38cffbf7-304f-441e-ac56-44cbb6d972c4",
    "Motherboard" : [ {
      "Manufacturer" : "ASRock",
      "Product" : "B450M Steel Legend",
      "SerialNumber" : "M80-C9008904435"
    } ],
    "SystemMemory" : [ {
      "Capacity" : "8589934592",
      "Manufacturer" : "Unknown",
      "Mode" : "",
      "PartNumber" : "CMK8GX4M1D3000C16   ",
      "SerialNumber" : "00000000"
    }, {
      "Capacity" : "8589934592",
      "Manufacturer" : "Unknown",
      "Mode" : "",
      "PartNumber" : "CMK8GX4M1D3000C16   ",
      "SerialNumber" : "00000000"
    } ]
  },
  "lastUpdatedAt" : 1605263215006
},
```

# EXHIBIT J

| 2021-09-21 3:24:56 PM | Dr. Bogart-Rivera, Patricia | SurgicalGuide |  |
| --- | --- | --- | --- |

# END OF EXHIBITS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that (a) a true and correct copy of the within and foregoing *Notice of Removal* has been electronically filed using an approved service which delivers an electronic copy to the following counsel, and (b) counsel has provided an additional service copy to the following counsel via email:

Matthew W. Clarke, Esq.
William Long, Esq.
Smith, Gambrell & Russell, LLP
1105 W. Peachtree St., NE
Suite 1000
Atlanta, GA 30309

This 22nd day of December, 2021.

*/s/ Adam S. Katz*
Adam S. Katz
State Bar No. 408661